Interstate Fire Ins. Co. *v.* Mrs. E. A. Nelson.

[62 South. 425.]

1. Fire Insurance. *Property covered by policy. Concurrent insurance. Stipulations. Enforcement. Agency. Cancellation of policy.*

A policy of fire insurance covering a hotel building "and addition thereto attached" is voided by the insured procuring concurrent insurance greater than the amount authorized by the terms of the policy, and insurance upon a sample room used in connection with the hotel connected with the hotel building by a covered board walk or gallery, the walk and roof thereof both being connected with both buildings, is insurance on such hotel "and additions thereto attached" under the terms of the policy.

2. Insurance. *Agency. Power to cancel policy.*

As a general rule an agency to procure insurance does not necessarily confer the power to cancel insurance. Such an agency terminates when the insurance is procured and the policy delivered to the principal.

Appeal from the circuit court of Lawrence county.

Hon. A. E. Weathersby, Judge.

Suit by Mrs. E. A. Nelson against the Interstate Fire Insurance Company. From a judgment for plaintiff, defendant appeals.

The declaration in this case, filed by the appellee here, is in two counts. The first count bases the right of recovery for loss by fire upon a policy of insurance issued by

the appellant's agent insuring the furniture and household goods of the appellee for the sum of six hundred dollars. This policy permitted a total concurrent insurance of eighteen hundred dollars, and provided that the policy should be void if the assured now has or shall hereafter procure insurance in excess of the amount permitted. This policy was issued September 21, 1911. The insurance company gave notice that it would offer evidence to show that the amount of insurance in force at the time of the loss, October 11, 1911, exceeded the amount permitted. Prior to the time of the issuance of the policy here in suit the appellee had procured a policy for twelve hundred dollars from the Germania Insurance Company. On October 5th the agent called upon appellee's husband and advised him that he had instructions to cancel the policy, and a letter was received the same day by the husband from the special agent of the Germania, stating that he was writing the local agent to relieve the company of further liability. This letter was offered in evidence, but on objection of the defendant was excluded. The appellee's husband testified that he had an agreement with the agent who wrote the Germania policy to substitute another policy for a like amount, and that thereafter this agent delivered to him a policy in the American Central Insurance Company for twelve hundred dollars and took up the Germania policy. It is the theory of the defendant that both the American Central and Germania policies were in force, and that therefore there was an excess of the amount permitted by its policy, which had the effect of avoiding liability. Appellee contended that the Germania policy had been canceled, and the American Central substituted for it, and that there was thus no excessive insurance.

The second count is upon a policy upon a building used as a hotel for five hundred dollars, which policy permits additional insurance of thirty-five hundred dollars, making a total of four thousand dollars permitted. The pol-

icy covers the building, described as a "two-story frame building with shingle roof and additions thereto attached." At the time of the fire there was in force on the building insured by the policy in suit a total of four thousand dollars, including this policy. Appellee had also obtained six hundred dollars insurance on a "sample room" and two hundred and twenty-five dollars insurance on a servants' house on the premises. The proof shows that the sample room was connected with the main body of the hotel by a covered gallery, and the lower floor was used by drummers in displaying their samples, and the upper story had been used for bedrooms, but at the time of the fire was used as a storage room. The defendant contended that this sample room was a part of the main building, being attached thereto and used as a part of the hotel, and was therefore covered by the policies insuring the main building, and that therefore the total insurance covering said buildings exceeded the four thousand dollars permitted by the policy, which therefore became void.

At the close of the testimony both sides asked a peremptory instruction, and the court instructed the jury to find for the plaintiff for the amount claimed.

*McLaurin, Armistead* and *Brien,* for appellant.

The law and the facts governing the rights of the respective parties herein on this six hundred dollar policy issued September 21, 1911, are entirely different from the questions involved on account of the location of the sample room and tenant houses; it is a question of other insurance just the same but it is controlled by a different state of facts. The form attached to the policy provides "forty-six hundred dollars on household furniture, useful and ornamental, including beds, linen, wearing apparel, etc.;" and there is an endorsement on the form of the policy of date September 25th authorizing in all twelve hundred dollars total concurrent insurance, mak-

ing eighteen hundred dollars, including this policy. By the terms of the contract, lines eleven to thirteen, it is provided as follows:

"This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure, any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy."

No additional insurance was allowed by the terms of the policy and it is not claimed that the Interstate Fire Insurance Company had notice of any additional insurance. We contend that instead of there being twelve hundred dollars additional insurance, as was permitted by the policy, there was twenty-four hundred dollars, making in all three thousand dollars on the household furniture and fixtures at the time of the fire. This is not a case where we are especially concerned about the intention of the parties; that is, the intention as between Nelson, the Germania Fire Insurance Company, and the American Central Fire Insurance Company, because the Interstate Fire Insurance Company was not a party to any understanding or arrangement between these parties and cannot be bound thereby except by the actual facts as they existed at the time of the fire. Two of these policies: the American Central and the Germania Fire were issued by the Ford agency at Laurel, Miss. The policy in suit here, the Interstate Fire Insurance Company, was issued by agent Hill at Silver Creek. Taking into consideration the permit for additional insurance quoted above and on the contract herein sued on, it follows that if at the time of the fire there was more insurance than eighteen hundred dollars in force, whether valid or not, the Interstate policy here sued on, was void. Plaintiff attempted to escape the force of this pleading in this defense and the facts that sustain it, by proving that the American Central policy was intended

as a substitute for the Germania policy, but we confidently submit, that even if this was so, that at the time of the fire there had not been such a substitution as will enable this court, or should have enabled the court below, to say that there was only one of these policies in force, whether valid or not.  Mr. Nelson's testimony, we think, clearly nullifies this contention and establishes two facts, which two facts we will proceed to discuss and they are as follows:

First.  There was no legal cancellation of the Germania policy before the fire;

Second.  The American Central policy was written, partially paid for, and was insurance ''whether valid or not'' at the time of the fire and constituted twelve hundred dollars of the eighteen hundred dollars insurance which Nelson admits was in force at the time of the fire.

On the first proposition that there was no cancellation of the Germania policy, the court will bear in mind that, in connection with the ruling of the court on the evidence hereinafter copied and found in Nelson's direct examination, that Mrs. E. A. Nelson was the assured, and that while it may possibly be fairly presumed from the record that A. J. Nelson had a right to take out and place this insurance for E. A. Nelson in the first place it, the record, absolutely fails to show his authority or any authority on his part, to accept notice of cancellation, and of course cannot indulge in any presumption as to that authority, and particularly in reference to the rights of a third party not affected by any negotiations or understanding between the parties to the contracts for additional insurance.  It was a fact (if it was one) that must have been affirmatively pleaded and proven by the plaintiff in reply to the special matter pleaded under the general issue; that is, we contend that if A. J. Nelson, the witness, had a right to accept notice of cancellation and to bind the assured thereby, it was an affirmative defense that must have been pleaded and proved, and the

court can indulge in no presumption in reference thereto.

The testimony copied above shows that Mrs. Nelson had twelve hundred dollars on the subject of insurance in addition to the six hundred dollars here sued for. True Nelson says it was cancelled; that is, A. J. Nelson says so, but he also states the facts which he relies on to show a cancellation and these facts do not bear out his conclusion or statement that the Germania policy was ever cancelled. He says that the special agent of the Germania had cancelled it by letter. Bear in mind that the issue now is not between the Germania and Nelson. It might be that the Germania would be estopped to deny cancellation if, for instance, it was suing for an unpaid balance on the premium and Nelson was relying on the cancellation as a defense. The Interstate Fire Insurance Company had no knowledge of, and is in no way bound by, the acts of the Germania.

Now, to whom was the letter or notice of cancellation addressed? Nelson states in the record in answer to a question as follows:

"Q. Did you go to see the insurance agent that had written that policy? A. Mr. Ford come down on the 5th, on the same morning I received my letter." Referring here to the letter he received from the special agent of the Germania Company in reference to cancellation. And Nelson reiterates again and again in his testimony that he received a letter, that Ford, the local agent of the Germania, talked with him in reference to cancellation, but not one time does he state; and nowhere does the record show, that Mrs. E. A. Nelson, appellee here, received any notice of cancellation from the Germania policy before the fire or consented to it, or that A. J. Nelson, the witness, had any authority to accept notice for her of cancellation. An agent who has a right to place insurance does not necessarily or impliedly have a right to accept notice of cancellation.

For a discussion of this question generally, see chapter on Cancellation in 3 Cooley's Briefs on Insurance, 2788. On page 2796 of this work of Mr. Cooley we find the following statement:   "In determining to whom notice must be given, the general principle is that the notice must be given to the person upon whom rests the obligation to pay the premium."   (*Farnham* v. *Phoenix Ins. Co.*, 83 Cal. 246.)   Consequently notice must be given to the insured but it is obvious that notice may be given to one whom the assured has duly authorized to receive it.   (*VonWein* v. *Scottish Union & National Ins. Co.*, 54 N. Y. Sup. Ct. 276.)   An employee who keeps a record of the insurance policies belonging to the insured is not necessarily one to whom notice of cancellation may be given.   (*Edwards* v. *Sun Ins. Co.*, 73 S. W. 886) but whether he has authority is a question for the jury.   So if there is evidence from which the jury may infer the insured's husband was her agent and that his agency extended to matters of insurance, notice to him is sufficient to effect a cancellation."   *Trundle* v. *Providence-Washington Ins. Co.*, 54 Mo. App. 188; *Dickard* v. *Farmers Mutual Assurance Co.*, 52 S. C. 412; 29 S. E. 786.

From this it will be seen that even if there had been any evidence in the records from which an inference could have been drawn that A. J. Nelson had a right, because he was the husband of E. A. Nelson, to accept notice of cancellation, it would then have been a question for the jury and even under this announcement it was error in the court below to give the peremptory instruction for the plaintiff.

Again on page 2796 of Cooley we find this statement: "Since notice must be given to the insured or to his duly authorized agent, it is obvious that notice to the agent of the insurance company is not sufficient to effect cancellation of the policy."   Citing a large number of authorities.

And again, we find this statement on page 2797: "As a general rule an agency to procure insurance is not, as

a matter of law, presumed to continue for the purpose of cancelling the insurance procured or of receiving notice of such cancellation." (*Broadwater* v. *Lyon Ins. Co.*, 34 Minn. 465; 26 N. W. 455.) "Such an agency terminates when the insurance is procured and the policy delivered to the principal. (*Niagra Ins. Co.* v. *Radan,* 87 Ala. 311; 5 So. 876; 13 A. S. R. 36.)

This doctrine is supported by a vast number of cases found on pages 2797 and 2798 of Cooley. And the same doctrine is also announced in Clement on Fire Insurance, voulme 2, chapter on Cancellation, beginning on page 297. See particularly, rule 33 on page 418 and rule 17 on page 411. Furthermore, Nelson's testimony shows that the Germania policy which was for twelve hundred dollars and the first policy for that amount that was written, was never surrendered until after the fire and not then until the American Central policy was actually delivered. See Nelson's testimony on re-cross examination.

From this evidence and these authorities we submit that there can be no question that, at the time of the fire the Germania policy was in full force and effect insofar as Mrs. Nelson, the appellee, was concerend, and could easily have been enforced by her. Her rights under the Germania were fixed by the fire and the local agent, Ford, could by no act of his, change the fixed liability of the Germania, nor are the rights of the Interstate Fire Insurance Company as a co-insurer to any extent advanced, increased, dismissed, diminished or extinguished by Ford's acts after notice of the fire. The ruling of this court in excluding the letter; the notice of cancellation, was manifestly correct, because the letter did not appear to be addressed to Mrs. Nelson; she was not shown to have any notice thereof, and A. J. Nelson was not shown to be such an agent as could accept notice of cancellation. So we submit that at the time of the fire there was, whether valid or not, insurance outstanding as follows:

In the Germania Fire Ins. Co. . . . . . . . .$1200.00
In the Interstate Fire Ins. Co. . . . . . . . .  600.00

Making  . . . . . . . . . . . . . . . . . . . . . . . . . . . .$1800.00
not including the American Central Fire Insurance Company for twelve hundred dollars which, at the time of the trial of this case, had been sued on and the case was pending in the court.  Since then, while it is not in the record, it is a fact that the liability claimed under this policy has been compromised and settled.  In Cooley's briefs on Insurance, vol. 2, p. 1853, in discussing the question of other insurance, particularly the discussion of void or inoperative policies, we find this statement: "But if a second policy is merely voidable or requires evidence aliunde to establish its validity, the authorities generally regard such a policy as violating the conditions in a prior policy against other insurance." Citing, in support of the text a large number of cases.  And again, we find it stated on the same page: "A policy requiring testimony aliunde to establish its validity, vitiates the prior policy." Citing *Turner* v. *Meridian Fire Ins. Co.,* 16 Fed. Rep. 454; *Lackey* v. *Ga. Home Ins. Co.,* 52 Ga. 456; *David* v. *Hartford Ins. Co.,* 13 Ia. 69; *Replogle* v. *American Ins. Co.,* 132 Ind. 360; 31 N. E. 947, affirming *American Ins. Co.* v. *Replogle,* 114 Ind. 1; 15 N. E. 810; *Bigler* v. *N. Y. Central Ins. Co.,* 22 N. Y. 402, affirming 20 Barber 635.

"There are even a few cases which go to the extent of holding that a second policy, even though void, will vitiate a prior policy which contains the provision that it shall be void in case other insurance is procured.  In those cases it is reasoned that the object of the condition against other insurance is to prevent the insured from taking out other insurance which he supposes is valid.  If such insurance is procured, the moral hazard is increased and it is immaterial whether a second policy is void or merely voidable." Cooley, vol. 2, pp. 1853-54.

*G. Wood Magee,* for appellee.

COOK, J., delivered the opinion of the court.

This action was begun in the circuit court upon two fire insurance policies—one insuring a two-story frame building, with shingle roof "and additions thereto attached," occupied as a hotel; the other covering the hotel and household furniture in said building. The policy covering the building permitted "thirty-five hundred dollars other insurance, warranted concurrent herewith;" the policy covering the furniture permitted eighteen hundred dollars concurrent insurance. Both policies contain this clause: "This entire policy, unless otherwise provided by agreement indorsed hereon, or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid, or not, on property covered in whole or in part by this policy." No such agreement was indorsed on the policy, or added thereto, except the concurrent insurance clauses above mentioned. At the direction of the trial court, the jury returned a verdict for the plaintiff below for the full amount sued for; hence this appeal.

Appellant insists that the policy covering the hotel building "and additions thereto attached" was voided by the insured procuring concurrent insurance greater than the amount authorized by the terms of the policy. Adjoining the two-story building mentioned in the policy there was located what is called by the witnesses a "sample room." The insured insisted that this building was not a part of the hotel, and that same was not covered by the description of the building insured, neither was it an "addition thereto attached." The record shows that the "sample room" was connected with the building, which the insured says was the building covered by the policy, by a covered board walk, or gallery; that the walk and roof thereof was connected with both buildings. In addition to other policies written by com-

panies other than appellant company, there was another policy which in terms covered the "sample room" alone. If the sample room was a part of the hotel, or if it was an addition attached to the hotel, the last-named policy was in violation of the concurrent insurance clause of this policy, because, if the amount for which the sample room was insured be added to the amount for which the hotel was insured, the concurrent insurance permitted by this policy was exceeded.

It appears from the undisputed evidence that the sample room was built for two purposes: (a) The lower story as a place for commercial travelers, guests of the hotel, to display their wares to prospective buyers; (b) the upper story as bedrooms for guests of the hotel. It also appears, however, that at the time of the fire, and for several months prior thereto, the upper story had been abandoned as guests' rooms, and was being used as storage rooms. It would seem that the sample room was built and used as a part of the hotel, and that the bedrooms over the sample room had been abandoned as bedrooms and converted into storage rooms did not change this prominent and undisputed fact. It is clear from the evidence that the fire originated in the sample room, and we believe that, had it been confined to this part of the hotel, the insured could have recovered under the policy covering the two-story frame building occupied as a hotel. Again, beyond all doubt, this building was an addition to the hotel and was attached thereto. *Phenix Ins. Co. v. Martin,* 16 South. 417.

Overinsurance encourages incendiarism and fraud, and for this reason public policy demands that contracts seeking to prevent overinsurance should be enforced, although, as in this case, there is nothing to suggest a suspicion that the loss was otherwise than an unavoidable misfortune to the owner. *Northern Assurance Co.* v. *Grandview Association,* 183 U. S. 308, 22 Sup. Ct. 133, 46 L. Ed. 213.

As to whether there was excessive insurance upon the furniture turns upon the question: Had the Germania policy been cancelled? The court excluded a letter written by the company's agent touching the cancellation, and we have nothing before us save the testimony of the husband of the assured, which is not altogether clear. This witness seems to have looked after all the insurance, and he calls the policies "my policies;" no doubt assuming that what his wife owned belonged to him. There was no evidence to show he had any authority to cancel his wife's policies, or to receive notice of cancellation; in fact, the husband and the attorneys for plaintiff treated him as the general agent of his wife, without going to the trouble of proving it. As a general rule an agency to procure insurance does not necessarily confer the power to cancel insurance. It has been held, and we think correctly, that "such an agency terminates when the insurance is procured and the policy delivered to the principal." Cooley's Briefs on the Law of Insurance, sections 2796, 2797, and cases there cited.

The judgment below on the policy covering the hotel building is reversed, and judgment here dismissing that count of the declaration. As to the other count, the case is reversed and remanded.

*Reversed and remanded.*