## STEWART *v.* COLEMAN & Co.

[81 South. 653, Division B, No. 20494.]

1. INSURANCE. *Powers of agent for insured. Cancellation.*
   As a general rule, an agency to procure insurance does not neces-
   sarily confer the power to cancel insurance. Such an agency
   terminates when the insurance is procured and the policy deliv-
   ered to the principal. ·

2. EVIDENCE. *Uncontradicted evidence.*
   When the testimony of a witness is not contradicted either by di-
   rect evidence or by circumstances it must be taken as true.

3. EQUITY. *Pleading as evidence. Answer on information and belief.*
   An answer sworn to on information and belief by persons not
   connected with the transaction, and who have no personal
   knowledge of the facts set out in the answer, does not entitle the
   defendant to the protection of the rule, requiring two witnesses
   or one witness and corroborating circumstances to overthrow a
   sworn answer denying the allegations of the bill (aside from
   Code 1906, section 586, modifying the rule).

4. FIRE INSURANCE. *Over.*
   Section 2615, Code 1906 (Section 5078, Hemingway's Code), makes
   the agent delivering an insurance policy the agent of the com-
   pany for that purpose and the company cannot avoid a policy
   because of other insurance, if the agent writing the insurance
   for the company had knowledge of the facts. .

5. INSURANCE. *Fire insurance. Interest in property.*         ·
   A plaintiff, who· had purchased property from a bank and exe-
   cuted a trust deed upon it for the amount of the purchase
   money, had an interest in fire policies covering the property,
   sufficient to maintain suit against the insurance companies
   for the original amount of the policies, which they had re-
   duced without his consent, though the policies were· payable
   under a mortgage clause to the bank as its interest might appear.

6. FIRE INSURANCE. *Cancellation of·policy. Authority.*
   Where ·fire insurance companies gave· no notice · to plaintiff of
   cancellation of policies and substitution of other policies for
   smaller amounts and neither the agency which procured the
   policies nor the bank which paid the premiums and from which
   plaintiff purchased the property insured had authority to cancel
   any insurance without plaintiff's consent, in such case the poli-
   cies first issued remained in ·force. \

APPEAL from the chancery court of Harrison county. HON. W. M. DENNY, Chancellor.

Suit by R. L. Stewart against Coleman & Co. Suit dismissed and complainant appeals.

The facts are fully stated in the opinion of the court.

*White & Ford,* for appellants.

Possession of an insurance policy raises a presumption of validity, delivery and regularity in all respects, and also payment of premium. *Gardner* v. *United Surety Co.,* 26 L. R. A. (N. S.) 1004; *Massachusetts Ben. Life* v. *Sibley,* 42 N. E. (Ill.) 137; *Jones* v. *New York Life Ins. Co.,* 47 N. E. (Mass,) 92.

"It is too late in the history of jurisprudence, if such time ever existed to allow corporations or individuals to escape their honest liability by secret understandings between principals and agents of which the public has and can have no knowledge. Under this contract he is clothed with authority not only to solicit and procure persons to insure with said company, but to collect and pay over the premiums to the agent of the company, and the company cannot escape its responsibilities when he does collect them from its patrons and fails to turn them over to the company." *Hart* v. *Insurance Company,* 27 L. R. A. (Wash.) 86; *Hall* v. *Life Ins. Co.,* 51 L. R. A. (Wash.) 291.

So we find that appellees admitted a valid contract, and vouched for it, then moved to exclude the evidence because the authority of the agent issuing it was not shown. Code 1906, sec. 2615 was enacted for the protection of the insured. It reads as follows: "Every person who solicits insurance on behalf of any insurance company, or who takes or transmits other than for himself, an application for insurance, or a policy of insurance, to or from such company, or who advertises or otherwise gives notice that he will receive or transmit the same, or who shall receive or deliver a policy

of insurance of any such insurance company, or who shall examine or inspect any risk, or receive, collect or transmit any premium of insurance, or make or forward a diagram of any building, or do or perform any other act or thing, in the making or consummation of any contract of insurance for or with any such insurance company, other than for himself, or who shall examine into or adjust or aid in adjusting any loss for or on behalf of any such insurance company, whether any of such acts shall be done at the instance or request or by any broker or other person, shall be held to be the agent of the company for which the act is done or the risk is taken as to all the duties and liabilities imposed by law, whatever conditions or stipulations, may be contained in the policy or contract, etc.''

No less than three provisions of this statement makes Tomlison the agent of every insurance company sued in this case. Appellees will evidently try to escape liability on the theory that there was a cancellation of the policies, or some of them. As we have seen insurance contracts are construed most strongly against the company. This being so, if they calim a cancelation, they must show a cancellation in strict accordance with the terms of the policies. The policies provide for five days' notice to the insured. Not a word of proof of any notice to the insured or to anybody else of any intention to cancel. He must have notice of the intention to cancel so he can procure other insurance. His insurance cannot be cancelled so as to leave him without insurance. There is no evidence of notice even to the Bank of Commerce. There are some notations "canceled" on the policies, but there is nothing in the policy showing any cancellation binding on appellant or that notice was given, either express or implied, but on the contrary the record shows by uncontradicted evidence that no notice was given and no legal cancellation made. So far as the record shows, the notation "cancelled" could have been put on the

policies after the fire, while the proof positively shows that they were not cancelled with the assent or knowledge of appellant and that no part of the premiums were returned.

"The insured is entitled to notice that his policy is cancelled and cancellation is not effectual until notice has been given." 19 Cyc. 545, and long list of cases from state and Federal courts. "The purpose of notice of cancellation is to give the insured an opportunity to reinsure." *Lipman* v. *Fall Ins. Co.*, 121 N. Y. 454. "The notice of cancellation must comply to that specified in the policy." 19 Cyc. 646.

"Stipulations and conditions in a policy are to be construed if possible, so as to avoid forfeiture, and afford indemnity, and provisions for forfeiture should not be extended beyond the mischief intended to be met." 19 Cyc. 657 and cases cited; 5 L. R. A. 291.

"Notice to a broker who procures insurance of the intention of the insurance company to cancel is not sufficient. Notice must be to the insured." *Grace* v. *Insurance Company*, 27 L. Ed. (U. S.) 932.

"The right to cancel is not effectively exercised by the company's giving notice to a broker or agent of the insured that it desires to cancel." *Harmon* v. *Insurance Co.*, 100 N. Y. 411; *Commonwealth* v. *Pelican Ins. Co.*, 17 Ins. J. L. (La.) 441. "An agency to procure insurance is ended when the insurance is procured and the policy delivered to the principal and the agent has no power thereafter to consent to a cancelation of the policy." *Insurance Co.* v. *Forcheimer*, 86 Ala. 541; *Insurance Co.* v. *Roden*, 87 Ala. 311; *Assurance Co.* v. *Insurance Co.*, 84 Va. 116; *Adams* v. *Mfg. Co.*, 17 Fed. 630; 22 Cyc. 1447, note 54.

Mr. McLaurin, one of the formidable array of attorneys for the insurance companies in this case and a lawyer who does a large practice, always appearing on the side of the Insurance Companies in his brief in *Insurance Company* v. *Nelson*, 105 Miss. 442, says:

"An agent who has a right to place insurance does not necessarily or impliedly have a right to accept notice of cancellation."

And he then cites many authorites among which are some of those we have cited to sustain this proposition. This court, in the opinion in the Nelson case just referred to, speaking through Judge Cook, adopted the contention of Mr. McLaurin and said: "such an agency terminates when the insurance is procured and the policy is delivered to the principal," citing Cooley's Briefs on Law of Insurance, sections 2796-7 and cases there cited.

The court held in that case that over insurance avoided the policy but the facts are in no wise similar to the facts here. In this case Tomlinson knew every policy that went into effect on the risk, and further, if there was any cancelation of any policy which was valid, there was no over insurance; if there was no cancellation, any subsequent policy after the required amount was written, would be void; the prior insurance remaining in full force and effect. In other words, it would be void, if at all, as to the excess only. The reason for the rule against over insurance is to prevent the temptation to set out fires. Here the agent who issued the policies knew of the over insurance, if any there was. Mr. Stewart was not a party to the isuing of any over insurance, had no knowledge of it, and was unable to find out what had become of his insurance until he filed a bill for discovery. Can the agent of an insurance company, invalidate a policy issued by him by issuing or procuring over insurance, without the knowledge or consent of the insured?

We respectfully submit that the question of over insurance is finally settled by the late case of *Aetna Insurance Company* v. *Smith*, 117 Miss. 327, 78 So. 289. In that case an agent issued a policy for fifteen hundred dollars on certain property. Afterwards he issued five hundred dollars more, both the agent and the in-

sured knowing of the over insurance. This court through Judge HOLDEN, in an admirable opinion, held the company liable. This case we are now presenting to the court, it is apparent, is much stronger for appellant, because appellant did not know of any alleged over insurance( but only the agent of the companies.

It will be noted that the lower court even dismissed the bill as to the Sprinfield Insurance Company, about which there was no dispute as to Tomlinson's agency, and we gathered in the lower court that counsel really did not seriously contend that company was not liable.

Appellant makes three novel contentions: 1. They say appellant was over insured and at the same time claims all the insurance which went to make up the over insurance was invalid and a nullity. 2. That appellant failed to make proof of loss for insurance it claims was not in effect and was a nullity and the existence of which was concealed by the insurance agent. This cannot be done. *McDonaly* v. *Miller,* 40 N. W. (Wis.) 665, and cases cited. 3. They insist Tomilson was appellant's agent. Appellant then had to file a bill for discovery against its own agent and drag him into court and force information from him which was in his possession and in the possession of the insurance companies.

We earnestly insist that having received the premiums as shown by the policies, and which is not disputed, and especially as no return of the premiums was ever made, appellees are now estopped to say their policies were cancelled, retaining the fruits of the contract, denying the obligations thereof.

"To deliver a policy with full knowledge of facts upon which its validity may be disputed and then to insist upon these facts as grounds of avoidance, is to attempt a fraud and the courts will not hear the insurance company to say that it knowingly made and delivered to the assured what it knew at the time to be an invalid policy." *Insurance Co.* v. *Randle,* 81 Miss. 724.

The answer of the German Fire Insurance Company appears on page 251-70 of the record. We have been unable so far to fully follow the pleader, but as a piece of rhetorical excellence it is a gem. It was drawn by a Louisiana lawyer, and a good one, but the practice in the two states is vastly different. It raises no valid defense, and as in the case of the other defendants who filed a joint answer, there was no proof at all to establish any alleged defense. We therefore respectfully ask the court to enter a decree for the appellant.

*J. C. Hollingswort, Griffith & Wallace* and *McLaurin & Armistead,* for appellee.

All issues of fact made by the pleadings and proof were settled by the chancellor in favor of the defendants. It is shown further in the answer that no premiums were ever collected by the companies, or agents issueing the policies of these defendant companies, therefore there was no premium to return nor was any due to be returned. The relation of Tomlinson to the Bank of Commerce is shown. The fact that the policies were all surrenderd and cancelled long before the fire with the advice and consent of the mortgagee, is shown and fully explained.

Now, as stated, the answer was duly sworn to, and therefore became evidence for defendants. Every part of the answer was responsive to the bill and particularly those parts giving a history of the issuance and cancellation of the policies. See *Massingale.* v. *Carraway,* 13 S. & M. 324; *Fulton* v. *Woodman,* 54 Miss. 158; *Buckner* v. *Ferguson,* 44 Miss. 677; 1 Ency. Pl. & Pr., 910-913.

A careful examination of all the evidence offered by complainant, we submit, in no way contradicts the statement of facts shown and sworn to in the answer as to the understanding between the real agents of the

defendant companies issuing the policies in question and Tomlinson, the agent "who brokered the line," and the Bank of Commerce. There is no contradiction of the fact that the policies were, after issuance and delivery to Tomlinson and by Tomlinson to the bank, in turn surrendered each and every one of them by the bank to Tomlinson, and Tomlinson in turn surrendered them to the real agents of the respective companies issuing them. They were marked cancelled and the policies sent in to the Home Office of the companies long before the fire and not one dollar of the premiums were ever paid to any real agent of the companies issuing the policies. It is true that in several places in Mr. Stewart's testimony taken in open court he stated that the bank was not authorized to cancel any insurance issued to an amount less than the amount of his account, but he nowhere undertakes to contradict in the slightest detail the proof as to the condition of the issuance of the policies and the cancellation and surrender, as shown by the sworn answer of these defendants.

Second proposition. At the time this suit was filed there was no right of action in Stewart, the complainant. We have already shown that Stewart purchased this property for a consideration of sixteen thousand dollars, to be paid from the Bank of Commerce. The date of the purchase was January 6, 1914. To secure the purchase money there was a trust deed given by R. L. Stewart to J. C. Ross, trustee, for the use and benefit of the Bank of Commerce. At the time of the fire which destroyed the subject of the insurance conveyed to Stewart, as just shown, for a consideration of sixteen thousand dollars not one dollar of the purchase money had been paid. Stewart admitted this in his cross-examination. It seems that long subsequent to the date of the fire, April 25, 1914, in fact the day before this case was tried, there was some kind of a settlement made by Stewart's attorney with the Bank

of Commerce; this was February 25, 1918. Speaking about this other matter and this settlement Stewart testified that he did not know whether he still owed the money or not. And he also testified, as has been shown, that at the time of the fire, April 25, 1914, the trust deed of the Bank of Commerce was in full force and effect to secure the sixteen thousand dollars purchase money, no part of which has been paid. Bearing these facts in mind we revert to our second proposition that the record shows that there was no right of action in Stewart at the time this suit was filed and we might add further, there never has been for this insurance. The policies all show that they were payable to the Bank of Commerce as its interest might appear and insurance authorized to be carried by each one was sixteen thousand dollars. It has been shown that the Bank of Commerce held a trust deed to the extent of sixteen thousand dollars on the subject of the insurance, so the provision of the Union Mortgage Clause, section 2596 of the Code of 1906, was automatically written into each contract of insurance.

It is shown in the first amended bill that it was agreed between complainant and the Bank of Commerce that the complainant would insure said property for a sum to be not less than sixteen thousand dollars. It is also shown in the second amended bill as follows: "That the said Bank of Commerce was fully authorized by complainant to take out said insurance in his behalf to an extent of at least eighteen thousand dollars, but was not authorized by him to cancel said insurance below the sum of sixteen thousand dollars," and again is shown on page fifteen, at the end of paragraph seven that at all times there was valid and subsisting insurance covered by said policies in favor of complainants and against the said several insurance companies in the sum of at least sixteen thousand dollars, if not the entire face of said policies.

Again it is shown in the second amended bill as follows; "But that neither the said Tomlinson, nor the Bank of Commerce, had any right to withdraw said policies from the said bank, or to conceal the same, below the sum of sixteen thousand dollars."

Now the court will bear in mind that this is not a suit of the Bank of Commerce; the Bank of Commerce is a party defendant. Now, what about Stewart's right of action for the insurance up to sixteen thousand dollars. We submit that nothing could be more definitely settled in this state than the application and meaning of section 2596 of the Code of 1906, or section 5060, Hemingway's Code. When the mortgage clause is actually attached to a policy, or is automatically attached, in favor of the mortgagee, such as the Bank of Commerce was in this case, it constitutes a separate and independent contract, just as if the assured, Stewart in this case, had nothing to do therewith and there is no right of action in the assured separate and distinct from the right of action of the mortgage. In other words, the mortgage has an independent policy and an independent right of action. See *Bacot* v. *Phoenix Insurance Company,* 96 Miss. 223, 50 So. 729. See also the very recent decision in the case of the *Scottish Union & National Insurance Company* v. *Warren-Gee Lumber Company, et al.,* decided December 2, 1918, 80 S. R., p. 9, 80 So., p. 9; See also *East* v. *New Orleans Insurance Association,* 76 Miss. 697; *Lowry* v. *Insurance Company, North America,* 75 Miss. 43. For this reason we say again that there was no right of action and never has been in Stewart.

The court will of course observe that the evidence is uncontested and conclusive; that in so far as the bank is concerned the bank consented to the cancellation of every policy down to ten thousand, two hundred and fifty dollars, so the bank, as mortgagee would have no right of action for any sum whatever, and if the bank has violated the instructions of Stewart in can-

celling policies below sixteen thousand dollars this is a matter between Stewart and the bank, with which these insurance companies are not concerned.

A mortgagee has a right to accept notice of cancellation of policies held by him and to bind assured thereof. See *Mille* v. *South Side Fire Ins. Co.*, 87 Bol. St. 399; *Burris* v. *Phoenix Ins. Co.*, 65 Mo. App. 157.

Third proposition. There was other insurance without notice and in excess of the amount authorized in each of the policies herein sued on. The evidence establishes the defense of over insurance without notice as it is not claimed that either Hewes and Yerger, Dupre and Birdsong, or Harvard, had notice of any insurance in excess of sixteen thousand dollars unless it can be established to the satisfaction of the court, and it was not done in the court below, that Tomlinson was an agent of these several companies, either, first, by actual appointment; or, second, by presumption arising from his action in the premises; or, third, by virtue of section 2615 of the Code of 1906.

First, as to agency by actual appointment; appellant does not contend for this position. His bill of complaint shows names of the agents issuing the respective policies. It is also shown by the signature to each of the policies made exhibits to the answer of the defendant insurance companies and also introduced by complainant.

Second, that Coleman & Company, or Tomlinson, issued no policy involved except the Springfield Fire & Marine, as admitted. As to the severel other policies, Tomlinson did what, in insurance parlance, is called "brokered the line" as admitted. That is, Tomlinson being unable to carry as much as sixteen thousand dollars in companies, he represented in his agency, undertook to place the difference between what he could carry and sixteen thousand dollars with other agencies.

The result was he secured the policies from the several other agencies on terms and conditions set out,

in detail in the sworn answer of defendants to the first and second amended bills. The Bank of Commerce, the mortgagee, actually surrendered, with full knowledge, every policy in question. There is no dispute about this fact. It is admitted that it had authority to surrender and cancel down to sixteen thousand dollars. We have discussed this above in the second proposition. Below sixteen thousand dollars, the Bank was the sole beneficial owner, as mortgagee, having a separate and independent contract, and it held a right to do as it pleased with this insurance up to sixteen thousand dollars, which was for its benefit alone; that is, be-tween itself and the insurance companies, it had a right to do as it pleased. If it consented to cancel these contracts of insurance, the cancellation would be binding. As to whether or not Stewart would, as a result thereof, have a right to a cancellation of his deed in trust *pro tanto*, held by the Bank of Commerce, this is a question of fact that was decided by the lower court and the finding of the lower court should not be disturbed. As to what authority in the premises Tomlinson had, we quote from Mr. Stewart's testimony as follows: We submit that Stewart's testimony shows that Tomlinson was his agent for the purpose of procuring this insurance and keeping it in force and it matters not what company he kept it in, or what policies he canceled, that Tomlinson had full authority in the premises. Tomlinson was a broker as to these policies and was agent for the assured. *Nov. Assur. Co.* v. *Norwman,* 105 Miss. 688; *Actina* v. *Reno,* 96 Miss. 172; See 2 Clements, p. 117, Rule 50; See also Rule 52, p. 118; Astrenderan Ins. (2 Ed.) p. 166; *McElroy* v. *British-American Assurance Co.,* 88 Fed. 863; *Schomer* v. *Hekla Insurance Company,* 50 Wis. 575. As to the burden of proof as to agency see Rule 3, 2 Clements on Insurance, p. 443; 2 Clements, p. 482; Rule 62 and case cited; *Sellars* v. *Insurance Company,* 105 Ala. 282, 16 S. R. 798; *McGraw* v. *German Fire Insurance*

*Co.,* 126 La. 32, 52 S. R. 183, 38 L. R. A. (N. S.) 614, and note.

Where both parties to a contract consent to a cancellation it is not necessary to follow the requirements of the policy in order to effect a cancelation and in this case parties to the contract of each side, we submit, had full authority and consent. See *Northern Asurance Co.* v. *Newman Lumber Co.,* 105 Miss. 688. As to the authority of a broker to consent to cancellation of policies see generally: Ostrander on Insurance (2 Ed.) sec. 16, p. 52; See also *Stone* v. *Franklin Fire Insurance Co.,* 105 N. Y. 543, 12 N. E. 45.

As to when subsequent insurance would cause a forfeiture generally, see, Ostrander, (2 Ed.), p. 554, et sequa. No premium was ever paid a single one of these companies. It was never offered to them for reasons fully explained in the answer, so there was no necessity for a tender. Even if a premium had been paid to the companies, or their agents, and the policies had gone into effect and had been subsequently surrendered by mutual consent, the effect would have been a complete cancellation and a refund of the premium would become a mere matter of credit.

The language used by attorneys for appellant in the *Nelson case,* 165 Miss. 442, must be construed in reference to the issues involved in that case, where it is applicable, and they are in no respect akin to the questions here involved. Tomlinson was, therefore, we think, the agent of assured and whatever knowledge he had as to additional insurance "whether valid or not" cannot be imputed to the real agents of insurance companies issuing the policies.

Third, we submit that section 2615 of the Code of 1906, has no kind of application here. If the question of agency involved was one questioning the position of Tomlinson as to "duties and liabilities imposed by law" the sufficiency of a service of process, for instance, or something of that kind, then section 2615 would apply.

Such is not the case here. The discussion of some duty of liability imposed by law is not involved here.

Tomlinson was an agent of Stewart, or the bank, and consented to the cancellation of the various policies sued on. We have fully discussed this question above and will not attempt to further elaborate on it here.

Fifth proposition. If Tomlinson was an agent of the defendant insurance companies then he represented both parties to the contract and this proposition applies with equal force to the Springfield Fire & Marine Insurance Company, and all of the policies issued by him were for that reason void from their inception.

In order to escape the effect of other insurance without notice, discussed above, appellant is required to take the position, and does take the position, as an examination of appellant's brief shows, that Tomlinson was the agent of the defendant insurance companies, all of them.

ETHRIDGE, J., delivered the opinion of the court.

R. L. Stewart bought a manufacturing plant and certain lots upon which said factory was situated from the Bank of Commerce of Gulfport, Miss., at and for the sum of sixteen thousand dollars, and executed a deed of trust in favor of said bank for sixteen thousand dollars, in which deed of trust he agreed to keep the property insured in a sum not less than sixteen thousand dollars, payable to the bank as its interests may appear, and agreed that if he failed to procure the insurance the bank could procure the insurance and charge him with the premiums thereon as part of the indebtedness secured thereon by the deed of trust. One S. A. Tomlinson operated an insurance agency in Gulfport under the firm name and style of Coleman & Co., and Stewart applied to Tomlinson for insurance on the said manufacturing plant, which Stewart was operating under the name of the Stewart Door Manufacturing

Company, and directed Tomlinson to deliver the insurance policies to the Bank of Commerce, and the bank would pay the premiums upon said policies. The employees of Coleman & Co. went to Stewart and procured the data necessary for the securing of said policies. Tomlinson procured policies, some written by companies represented by him and some written by companies represented by other agents, and took the said policies to the bank and delivered them, collected the premiums and receipted the bank for the same, and the amount of the premiums was charged to the account of Stewart by the bank. Subsequent to the issuance of these original policies Tomlinson went to the bank for the purpose of canceling the policies, but without notice to Stewart, and procured the original policies delivered to the bank, and substituted other policies for them. and from time to time between January, 1914, and April 25, 1914, undertook to cancel different polcies and substitute other policies for them, and finally canceled or took up some of the policies without giving Stewart any notice so that the insurance was reduced or undertaken to be reduced to ten thousand, two hundred and fifty dollars, all without the knowledge or consent of Stewart, but the said policies were delivered to Tomlinson for cancellation and substitution by the cashier of the bank, which bank had the policies in its possession. On the 25th day of April, 1914, the manufacturing plant was burned, and the insurance adusters came to adjust the losses; that is, the companies having polices to the amount of ten thousand, two hundred and fifty dollars. When the adjusters came Stewart told them he had sixteen thousand dollars insurance on the property, but when he went to the bank to get the policies he was informed that all policies above ten thousand, two hundred and fifty dollars had been canceled. He protested that the companies had no authority to cancel without notice to him, and demanded of the bank and of Tomlinson the names of the insurance

companies which had written the policies upon said
property, but the bank and Tomlinson refused to give
the information, and Stewart filed a bill in the chancery
court for discovery, and through the answer of Cole-
man & Co. and the bank discovered that policies had
been written on the said property as follows:

|  | Policy No. | Date. | Amt. |
|---|---|---|---|
| National Lumber Co. | 112405 | Jan.21/14 | $3,500 00 |
| Springfield Fire & Marine | 1613 | Jan.21/14 | 3,000 00 |
| National Fire | 948451, | Feb. 6/14 | 2,000 00 |
| New York Underwriters. | 20541 | Feb. 9/14 | 1,500 00 |
| Glens Falls | 1014 | Feb.12/14 | 1,500 00 |
| Fireman's Fund | 156210 | Feb.19/14 | 1,500 00 |
| Globe & Rutgers | 772205 | Feb.26/14 | 1,500 00 |
| Orient | 543102 | Feb.26/14 | 1,500 00 |
| London & Lancashire | 8489474 | Mar. 7/14 | 1,500 00 |
| Orient | 543104 | Mar.11/14 | 1,000 00 |
| National Fire | 948460 | Mar.11/14 | 1,000 00 |
| Caladonian | 2425393 | Mar.14/14 | 1,000 00 |
| German Fire | 305253 | Mar. 1/14 | 1,500 00 |
| Agricultural | 1330 | Mar.23/14 | 1,000 00 |
| American | 36549 | Mar.23/14 | 1,500 00 |
| Continental | 753 | Mar.23/14 | 1,250 00 |
| German Alliance | 80507 | Mar.23/14 | 1,250 00 |
| German Fire | 305254 | Mar.23/14 | 1,000 00 |
| Germania | 5095 | Feb.23/14 | 1,500 00 |
| Equitable | 601107 | Mar.27/14 | 1,250 00 |
| Royal Exchange | 3965455 | Apr. 3/14 | 1,250 00 |

Thereupon suit was filed by Stewart against said
companies for the amount of the difference between ten
thousand, two hundred and fifty dollars collected and the
amount of sixteen thousand dollars, the minimum amount
of insurance agreed to be carried; suit being filed in the
chancery court, and praying for judgment according to
his rights arising under the said state of facts, alleging
that Coleman & Co. and the bank, or either of them, had
no authority to cancel the insurance procured upon his
property, and bringing in all of the insurance companies,

so that judgment might be rendered according to the rights of all parties. The insurance companies denied liability, and contended that Coleman & Co. represented the insured in procuring the insurance, and that he was the agent of the insured rather than the agent of the insurance companies, and, if this defense was not sound, that the bank had authority to surrender the policies involved, and to reduce the insurance on the theory that the bank was the agent of Stewart; and third, that the property was overinsured. The several policies contained provisions limiting the amount of the insurance to be carried on the plant to sixteen thousand dollars. They also contended that Stewart had no interest in the policies, as they were payable to the bank as its interest appeared.

Stewart testified in his own behalf, and said that the property destroyed by fire was estimated by the adjusters at forty-two thousand dollars, and that he was the sole owner of the Stewart Door Manufacturing Company, subject only to the deed of trust held by the bank; that he paid the bank sixteen thousand dollars, or rather gave a deed of trust for that amount for the purchase money and received a deed; that the deed of trust had never been foreclosed, and that he arranged with the Bank of Commerce to pay the premiums of insurance and charge it to his account; that the first premium was paid and receipt taken, and that he had not authorized any one to surrender his policies, and no one had the authority to surrender them so that they would amount to less than sixteen thousand dollars; that he furnished Coleman & Co. with a schedule of his property, and that Coleman & Co. had written insurance on other property belonging to him; that George Thomas and Miss Laura Rankin, employees of Coleman & Co., came out and secured the data; that Miss Rankin was the bookkeeper and Thomas an employee of Coleman & Co. He introduced a receipt from Coleman & Co. for the premiums reading as follows:

"Received of Bank of Commerce, thirteen hundred forty-four and 75/100 dollars for Stewart Door Co. [Signed] Coleman & Co., by S. A. Tomlinson. 2/26/14."

He also testified that subsequent to the fire he had settled with the Bank of Commerce on the deed of trust by paying the ten thousand, two hundred and fifty dollars, to the bank, and agreeing to sell the lands and injured machinery and to give the bank one-third of the proceeds; that the machinery was practically worthless. He had been offered one hundred and fifty dollars for the boiler, but considered it worth more than that, but not more than four hundred dollars.

Rucks Yerger, an insurance agent, testified for the complainant that he was a member of the Hewes & Yerger Insurance Agency, and was manager of the agency when some of the policies involved in this suit were issued, and that F. S. Hewes was then owner of the agency; that at the time these policies were issued there was no special understanding between him and Tomlinson about the division of the commissions, but that Tomlinson was paid a commission on the policies suffering a loss; that the commissions were divided equally between the agents, unless some special arrangement was made. The agreement between the bank and Stewart as to the settlement of the deed of trust was introduced in evidence, and bears date July 31, 1917, more than three years subsequent to the burning.

The defendant introduced no evidence except the agreement between the bank and Stewart settling the deed of trust and that Tomlinson was elected a director of the bank January 14, 1914. Neither Tomlinson nor the officers of the bank were introduced to contradict Stewart's testimony, resting their case upon complainant's evidence, and the court adjudged that the complainant was not entitled to the relief prayed for, and the suit was dismissed on its merits, and Stewart taxed with the costs.

In the case of *Interstate Fire Ins. Co.* v. *Nelson,* 105 Miss. 437, 62 So. 425, this court laid down the rule as to the power of an agent to procure insurance as follows:

"As a general rule, an agency to procure insurance does not necessarily confer the power to cancel insurance. It has been held, and we think correctly, that 'such an agency terminates when the insurance is procured and the policy delivered to the principal.' Cooley's Briefs on the Law of Insurance, sections 2796, 2797, and cases there cited."

Stewart testifies that neither the bank nor Tomlinson had authority to cancel the policy. He is not contradicted on this point, and both the officers of the bank and Tomlinson were available to the insurance companies, and we assume they would have testified if the facts would warrant it in favor of the insurance companies, as the record shows they refused to give Stewart any information until compelled to do so by the court. They were not shown to be in collusion with Stewart, and we must accept the testimony of Stewart as true, as he is not contradicted either by direct evidence or by circumstances. As to the proposition that the answer sworn to on information and belief presents evidence to sustain the chancellor's finding, we do not think this point well taken. In *Purvis* v. *Woodward,* 78 Miss. 922, 29 So. 917, this court said:

"It is clear that the answer was sworn to by one who had no personal knowledge of the facts set forth in the answer, and such an answer is not within the protection of the rule."

The answers in the present case were made on information and belief by parties not connected with the transaction and who, under the facts of this record, could have had no personal knowledge of the facts set forth in the answer.

We do not think there was overinsurance in the sense that overinsurance would avoid the policies. It was not the intention of either the agent Tomlinson or Stewart

or the bank to have more than sixteen thousand dollars insurance in force at any one time; and, while the total policies written exceed this amount. it was not intended by any of the parties that there should be more than sixteen thousand dollars insurance, and certainly the agent of the insurance companies, Tomlinson, had knowledge of the facts.  Section 2615, Code of 1906, section 5078, Hemingway's Code, makes the agent delivering an insurance policy the agent of the company for that purpose, and we have held that the company cannot avoid a policy because of other insurance, if the agent writing the insurance for the companies had knowledge of the facts. *Ætna Ins. Co.* v. *Smith*, 117 Miss. 327, 78 So. 289, L. R. A. 1918D, 1156.

There is no merit in the contention that Stewart had no interest in the insurance policies because they were payable under the mortgage clause to the bank as its interests may appear; for the payment to the bank would have benefited Stewart by paying his debt and leaving his property free, whereas not paying the amounts left Stewart indebted to the bank, which debt he had to care for after the fire.

Inasmuch as the insurance companies gave no notice of cancellation to Stewart, and inasmuch as the testimony shows that neither the bank nor Tomlinson had authority to cancel any insurance without the consent of Stewart, the policies first issued to the extent of sixteen thousand dollars remain in force and are liable to the appellant.  That is to say, the National Lumber Company was liable on policy No. 112405 issued January 21, 1914, for three thousand, five hundred dollars, which it paid; the Springfield Fire & Marine Insurance Company is liable on No. 1613, issued January 21, 1914, for three thousand dollars; National Fire was liable on policy No. 948451, issued February 6, 1914, for two thousand dollars, which it paid; the New York Underwriters' Insurance Company is liable on policy No. 20541, issued February 9, 1914, for one thousand,

five hundred dollars; Glens Falls Insurance Company is liable on policy No. 1014, issued February 12, 1914, for one thousand, five hundred dollars; Fireman's Fund is liable on policy No. 156210, issued February 19, 1914, for one thousand, five hundred dollars; Globe & Rutgers is liable on policy No. 772205, issued February 26, 1914, for one thousand, five hundred dollars; the Orient is liable on policy No. 543104, issued February 26, 1914, for one thousand, five hundred dollars. The several companies will be credited on said amounts with the amounts paid the insured; that is to say, judgment is here rendered for five thousand, seven hundred and fifty dollars, with six per cent, interest from June 25, 1914, against the Springfield Fire & Marine Insurance Company of Springfield, Mass.; the New York Underwriters Insurance Company of New York; the Glens Falls Insurance Company of Glens Falls, N. Y.; the Fireman's Fund Insurance Company of San Francisco, Cal.; the Globe & Rutgers Insurance Company of New York; and the Orient Insurance Company of Hartford, Conn.; said sum to be prorated between said insurance companies in proportion to the amount that the several policies bear to the total amount of the said policies written by said companies.

*Reversed and judgment here.*