QUEEN INS. CO. *v.* DELTA GIN CO.

Division B.    Dec. 4, 1950.

No. 37586 (48 So. (2d) 866)

C. M. Murphy, Jr., and Watkins & Eager, for appellant.

L. R. Wadlington, and Montgomery & Varnado, for appellee.

172

**Hall, J.**

Appellants insured appellee against loss by fire, with an extended coverage endorsement which included loss by windstorm, on its ''one story I-C building with I-C roof, including sheds, additions and platforms attached thereto, while operated as a gin house.''

The main gin building was 100 feet in length, running north and south, and 24 feet in width, running east and west. As a part thereof there was an open shed on the east side 14 feet in width, connected securely to and running the entire length of the building. Underneath this shed there was a platform scale for weighing the load as cotton was brought in for ginning. The scale beam was located in a separate office building east of and immediately adjacent to said shed. Fifty feet to the west of the south end of the main gin building there was a cottonseed house which was connected thereto by a seed conveyor. Immediately north of and connected to the main gin building there was a cotton platform upon which the bales of cotton would be dumped when they emerged from the gin; connected to this platform and running 40 feet to the north there was a ramp over which the finished bales of cotton were moved to an open cotton platform where they were temporarily stored. Securely connected to the east side of said platform there

was a wagon shed 20 feet in width, running east and west and 70 feet in length, running north and south. This shed was used by wagons and trucks bringing seed cotton to the gin as a protection of their loads from the weather while awaiting their turn for ginning the same. On March 26, 1948, while all the policies in question were in force and effect, the wagon shed was demolished by windstorm. Appellants denied liability for the loss and appellee sued and recovered judgment for $1728.78 which was prorated against each of appellants in accordance with their several proportionate amounts of the entire coverage.

The principal point for consideration is whether the wagon shed was within the coverage of the policies under the language thereof which included with the main gin building ''sheds, additions and platforms attached thereto.'' ██ ██ From the foregoing statement of the facts it will be noted that there was a continuity of connection between the main gin building and the wagon shed, and in our opinion this shed was within the protection of the policies. In the case of Phoenix Insurance Co. v. Martin, Miss., 16 So. 417, this Court said: ''We think the building injured by the fire was covered by the policy of insurance as set out in the record. It was being used as a part of the residence, being partly occupied by the domestic servants of the assured, and one of the rooms being used as a laundry room. It is true the building was not annexed to the 'two-story brick shingle-roof building,' but that was not alone the subject of the insurance. What was insured was this 'two-story brick shingle-roof building and additions thereto, occupied by assured as a dwelling.' In cases of doubt, inferences favorable to the assured and against the insurer are to be indulged. The language of the policy is broad enough to include the building injured, and the fact that there was, as admitted, 'no other houses or structures in the yard which might possibly be claimed as additions to the main building, not built in it as a part of the house originally,'

shows that this must have been the 'addition' meant by the policy.''

This case was cited with approval in Interstate Fire Insurance Co. v. Nelson, 105 Miss. 437, 62 So. 425. The policy in that case insured a hotel building ''and additions thereto attached.'' It was shown that there was an entirely separate building on the premises which was used as a sample room. There was a covered board walk leading from the hotel building to the sample room and connected to both buildings. The sample room was built and used as a part of the hotel, and this Court held ''beyond all doubt, this building was an addition to the hotel and was attached thereto.''

Appellee's president testified, and so did appellants' agent who wrote the policies in question, that before issuance of these policies the agent for appellants visited and inspected the gin plant and was advised that appellee desired full coverage on all the buildings. Thereafter the insurance agent issued the policies and delivered them to appellee and stated to appellee that everything was covered; he also testified that it was his intention to issue policies which covered the wagon shed and that he thought it was covered by the policies which he wrote. It is contended by appellants that this parol evidence should not have been admitted. It is true that ▮▮ parol evidence cannot be admitted to alter or change the specific terms of an insurance policy, or to extend it so as to cover property not intended in the description, but it is admissible for the purpose of showing what property was intended to be described therein where such description is not absolutely clear from the language of the policy. Shivers v. Farmers' Mutual Fire Insurance Co., 99 Miss. 744, 55 So. 965. See also Price v. Southern Home Insurance Co. of the Carolinas, 100 Fla. 338, 129 So. 784. We are therefore of the opinion that this evidence was properly admitted.

Appellants further contend that the policies in suit are void and no recovery can be had thereon for the reason

that the premium rate for windstorm coverage on an open shed, as fixed by the State Rating Bureau, is higher than the rate for the same coverage on an enclosed structure such as the gin building, and that in these policies the rate charged by appellants was only the rate fixed by the bureau for the gin building. Consequently it is argued that the policies are in violation of Section 5833, Code of 1942, which provides: ''To prevent unjust and unlawful discrimination, no fire insurance company doing business in Mississippi shall make any distinction or discrimination in favor of parties insured, nor shall any such company or agent pay or allow as inducements to insure, any rebate or premium payable on the policy, except in the form of dividends under profit-sharing policies or any special favor or advantage or other benefits to accrue thereon, or any valuable consideration or inducement whatever, not specified in the policy contract of insurance; and it shall be the duty of the insurance commission to enforce the provisions of this subsection by the promulgation of such rules and regulations as to it may seem necessary or proper. Whenever it shall appear to the satisfaction of the commission, after a hearing before it upon notice, that any company, officer, agent, subagent, broker or solicitor has violated any provision of this section, it shall revoke the license of any such company, agent or person to transact business in this state, and no other license shall be issued to any such company agent, or person within one year after such revocation.''

It will be noted that this statute itself declares that its purpose is to prevent unjust and unlawful discrimination in the issuance of insurance policies; it prohibits rebates and special inducements in obtaining insurance business and provides a penalty for violation thereof; that penalty is not invalidation of policies so issued or obtained but is revocation of the insurance company's license to transact business in this state. There is no contention here that appellee and appellants'

agent entered into any sort of scheme, fraudulent or otherwise, for a rebate of a portion of the premium. Appellants' position is simply this: Our agent made an honest mistake in writing these policies in that he failed to insert in the policies the correct amount of premium necessary for the coverage included; he failed to detect this minor error and we, too, failed to detect it; nobody was guilty of any conscious wrongdoing, but nevertheless we contend that the policies are void and that we should be allowed to escape liability for the loss because of this error which was not even known to appellee.

This Court is not disposed to go beyond the intention of the legislature and declare a forfeiture of the policies when the statute itself does not declare a forfeiture. We recently held that "we are aligning ourselves with the decisions of other jurisdictions which hold that in the absence of a statutory provision declaring a forfeiture, none will be imposed." Gardner v. Reed, 207 Miss. 306, 316, 42 So. (2d) 206, 208.

In 44 C. J. S., Insurance, Section 245, there is a discussion of the statutes of various states which are similar in every respect to the quoted statute of this state, and on the subject of the effect of a violation of such a statute it is therein said: "The discriminatory provision or agreement itself has been held invalid and unenforceable, but where there is no fraud, mistake, or inequitable conduct on the part of insured provisions for discriminatory insurance benefits have been enforced after insured in good faith has carried out his part of the agreement and become entitled to the benefits agreed on. However, a violation of the statute does not render the policy either illegal or void, or unenforceable by insured or the beneficiary. The reasons for the rule are that the statutes do not declare the policy void or unenforceable; that the punishments or penalties which they inflict, whether criminal or a revocation or suspension of the license of the company or the agent to do business in the state, are imposed on the company and

its agents alone, and therefore it is regarded that insured is not in pari delicto, and that it would be unjust to refuse enforcement of the contract in favor of insured." 44 C. J. S., Section 245, pages 1014-1015. See also Hayes v. Travelers Insurance Co., 10 Cir., 93 F. (2d) 568, 125 A. L. R. 1053, and the authorities cited therein.

Finding no error in the record before us the judgment of the trial court is affirmed.

Affirmed.