## Mutual Life Ins. Co. of New York v. Vaughan.

[88 South. 11.   No. 21263.]

1. INSURANCE. *Delivery of policy by agent in violation of instructions to secure medical certificates held act of insurer.*

Where an insurance company executed a policy and sent it to an agent in this state to be delivered when the insured furnished a health certificate by one of its examining physicians, but no such provisions were in the policy, but in a letter of instructions, and the agent delivered the policy without complying with the instructions, the delivery by the agent is the act of the company, under section 2615, Code 1906 (section 5078, Hemingway's Code), and the policy is valid in the hands of the insured or his beneficiary, though no health certificate was furnished the agent or the company.

2. INSURANCE. *Insurer's liability depends on good health in fact where agent delivers policy without medical certificate; violation of rule by agent requiring medical certificate held not to invalidate policy.*

In such case where the policy stipulates that the policy should not be in effect unless the insured was in good health when the policy was delivered to and accepted by the insured, the question of liability depends upon the fact of good health, and if the insured was in fact in good health when it was delivered, it is not avoided because the company had a rule for the government of its agents that it should not be delivered without a medical examination by its examining physical, where more than sixty days had elapsed from the first examination, where such rule was not brought to the knowledge of the insured.

3. INSURANCE. *Acknowledgment of receipt of premium in policy held conclusive against insurer in favor of beneficiary.*

Where an insurance policy recited on its face, "In consideration of the annual premium of Fifty and 10/100 dollars, the receipt of which is hereby acknowledged," such recital is more than a mere receipt; it is contractual, and is conclusive against the company in favor of the beneficiary so far as liability depends upon payment of the premium is concerned. It does not prevent the company from holding the insurer liable for the payment of the premium. The rule is that, as between the insured

125 Miss—24

and the insurer for the purpose of collecting the premium, it is not conclusive but only *prima-facie* evidence of payment; but as between the beneficiary and the insurer it is conclusive, being contractual.

4. TRIAL. *Instructions must be considered as a whole.*
The instructions given by the trial court in a jury trial are to be taken and considered as a whole, one as supplementing or modifying another, and if when so construed they present the law fully and fairly, the court will not reverse for the giving of a single instruction for one party, though it may not be free from criticism.

APPEAL from circuit court of Montgomery county.
HON. THOS. L. LAMB, Judge.

Action by Mrs. Margaret B. Vaughan against Mutual Life Insurance Company of New York. Judgment for plaintiff, and defendant appeals. Affirmed.

*Fulton Thompson, J. Harvey Thompson* and *Robert H. Thompson,* for appellants.

It is lawful for an insurance company to stipulate in any contract executed in its behalf that the provisions therefor cannot be waived by notice or representation unless given to or made by one of its principal officers. This applies in the case at bar especially:

(a) To the contractual terms of the application and the terms of the alleged policy providing that no agent or other person except the president, vice-president, a second vice president, a secretary or the treasurer of defendant company has power on behalf of the company to make, modify or discharge any contract of insurance to extend the time for paying a premium, to waive any lapse or forfeiture or any of the company's rights or requirements so as to bind the company by making any promise respecting any benefits under any policy or by accepting any representations or information. And it applies with full force.

(b) To the contractual terms of the application reading: "The proposed policy shall not take effect unless and

until the first premium shall have been paid during my continuance in good health and unless also the policy shall have been delivered to and received by me during my continuance in good health, with an exception negatived by the application as well as by uncontradicted testimony.

The authorities supporting our first above stated proposition are numerous, and we cite only a few of them. *New York Life Insurance Co.* v. *O'Dom*, 100 Miss. 219; S. C. 56 So. 379; *Odd Fellows, etc., Association* v. *Smith*, 101 Miss. 332; S. C. 58 So. 100; *Truly* v. *Mutual Life Ins. Co. of New York*, 108 Miss. 453; S. C. 66 So. 970; *Paine* v. *Pacific Mutual Life Ins Co.* (Eighth Circuit), 51 Fed. 689; S. C. 2 C. C. A. 459; *Powell* v. *Prudential Ins. Co.* (Ala.), 45 So. 208; *Reese* v. *Fidelity Mutual Life Association*, 111 Ga. 82, S. C. 36 S. E. 637.

There was no payment of the initial premium in this case. The offer by Feazell to extend time for the payment of the premium contained in the letter to Vaughan (the one he claims to have sent with the alleged policy and the reception of which by Vaughan is denied in a way by plaintiff) did not (aside from the requirement of a new health certificate) put the alleged policy in force. Under policies like the alleged one in this case an insurance solicitor unauthorized to grant an extention of time for the payment of a premium, who takes the note of the proposed insured for the premium does not thereby put the policy in force although he makes an actual delivery of it. Therefore, of course a verbal or written offer to extend the time for the payment of the premium without taking a note for it, accompanied by a conditional delivery requiring a health certificate is wholly ineffectual to put the policy in effect. *Batson* v. *Fidelity Mutual Life Ins. Co.*, 155 Ala. 265; S. C. ——So. 578; S. C. 130 Am. St. Rep. 21; *Powell* v. *Prudential Insurance Co.* (Ala.), 45 So. 208; *Russell* v. *Prudential Life Ins. Co.*, 176 N. Y. 178; S. C. 98 Am. St. Rep. 656; *Cable* v. *United States Life Ins. Co.* (Seventh Circuit). 111 Fed. 19; *Ormand* v. *Mutual Life Association*, 96 N. C. 158; S. C. 1 S. E. 796.

Note that in the Alabama case, *Batson* v. *Fidelity, etc. Co., supra,* the policy was offered in evidence and as well, the receipt of the solicitor of first premium, and yet the court held the peremptory charge asked by the insurance company should have been given, because the non-payment of the premium was established by testimony uncontradicted save by the recitals in the policy and the solicitor's receipt, these being insufficient to justify a refusal of the charge. In the case at bar no witness denied the testimony showing that the premium was unpaid and plaintiff's case stood alone on the recital in the, as we claim, undelivered policy, certainly not unconditionally delivered.

An applicant to an insurance company for insurance on his life is charged with notice of the contents of his written application which, by the terms of the policy (as in the case at bar) is made a part thereof; and if the application provides that the policy shall not be in force until the first premium is paid, the legal result is that the insured covenants, with the company directly and not through its agents, that the policy shall not be binding until such payment is made. *Russell* v. *Prudential Insurance Co.,* 176 N. Y. 178; S. C. 98 Am. St. Rep. 656; *Ormond* v. *Mutual Life Association* (N. C.), 1 S. E. 796. The case of *Whipple* v. *Prudential, etc., Insurance Co.,* 222 N. Y. 39, has no application to the case at bar, because defendant's manager (Dowdle) did nothing whatever that can be construed as a waiver of a new certificate of health and there is no pretence that he waived anything.

*McLean & Rowe,* for appellee.

The trial court committed no error in submitting the case to the jury, because of the obvious conflict of the testimony. It is the well settled rule in our state that all cases should be submitted to the jury, if there be conflict in the evidence, or if the facts be undisputed, and reasonable men may draw different conclusions therefrom. *Traut-*

*man* v. *L. M. R. R. Co.*, 95 Miss. 183; *N. O. M. & C. R. R. Co.* v. *Ann Cole*, 101 Miss. 173; *Landrum* v. *Y. & M. V. R. R. Co.*, 89 Miss. 388; *N. O. & N. E. R. R. Co.* v. *Brooks*, 85 Miss. 269; *Christian* v. *R. R. Co.*, 71 Miss. 237; *Nesbit* v. *City of Greenville*, 69 Miss. 452; *R. R. Co.* v. *Turner*, 71 Miss. 402; *Southern Ry Co.* v. *Floyd*, 55 So. 288; *Abernathe* v. *M. J. & K. C. R. R. Co.*, 97 Miss. 859; *Stephens* v. *R. R. Co.*, 81 Miss. 206; *Bell* v. *R. Co.*, 87 Miss. 234.

This court, in the case of *Sovereign Camp Woodmen of the World* v. *Wedgeworth*, 75 So. 565, decided June 11, 1917, affirmed a judgment of a jury in a *per curiam* opinion, and upon examination of the record in that case, we find that the question of the payment of dues for three months on the part of the insured was submitted by the trial court to the jury.

The case at bar is identical. The policy sued upon acknowledges receipt of the initial premium due thereon, and was introduced in evidence. The appellant claimed the premium was not paid. The court submitted the case to the jury, and the jury found in favor of the plaintiff. All we ask is that the court shall affirm this verdict upon the same ground as in the *Wedgeworth case, supra*, the number thereof being 19274 upon the Docket of this court.

Counsel for appellant strongly rely upon the case of *Batson* v. *Fidelity Mutual Life Ins. Co.*, 155 Ala. 265, 130 A. S. R. 31, as authority for the argument that the nonpayment of the premium, being established by the testimony uncontradicted save by the recitals in the policy and the solicitors receipt therefor, was established absolutely. But, this Batson case is not at all in point with the case at bar, for the reason that, although the receipt of the premium was acknowledged in Batson's receipt, still the receipt itself showed on its face that a note had been given for the premium and also stipulated that the failure to pay the note thus given for the premium at its maturity would operate to end and determine the policy. Here was a writing showing that the premium had not been paid.

In the case at bar we have receipt of the premium acknowledged in the policy, and an attempt by the mouth of the agent. Mr. Feazell, to show the premium had not been paid. The case of *Powell* v. *Prudential Life Ins. Co.* (Ala.), 45 So. 208, cited by counsel, is not in point, for the reason that there was not even a manual delivery of the policy to the insured at all in that case, and the insured died while the policy was in possession of another, who delivered it to the father of the insured after the death of the insured. The insured was taken fatally sick before there was ever any pretense of a delivery of the policy to any one, and all the evidence showed conclusively that the policy was not delivered until after the death of the insured.

Likewise, the case at bar is easily distinguishable from *Russell* v. *Prudential Life Ins. Co.,* 176 N. Y. 178, cited by counsel for appellant on the same proposition. In Russell's case, it is to be observed that the policy opens up with this provision, to-wit: "In consideration of the application of this policy, which is hereby made a part of this contract, and of the quarterly annual premium of seven and two-one hundredths dollars, which it is agreed shall be paid to the company in exchange for its receipt on the delivery of this policy," etc. (See page 663 of 98 A. S. R. where the case is also reported.)

Whereas, the policy in the case at bar opens up thus: "The Mutual Life Insurance Company of New York, in consideration of the annual premium of fifty and 10/100 dollars, the receipt of which is hereby acknowledged, and of the payment of a like amount upon each twenty-third day of September hereafter," etc.

The opinion of the court in *Russell's case, supra,* makes for us the distinction and is authority for our position that the case at bar is one that is not governed by the Russell case but by the other line of decisions in the state of New York, headed by the case of *Stewart* v. *Union Mutual Life Ins. Co.,* 155 N. Y. 257, 49 N. E. 876, in which it was held that the right of insurance companies to re-

strict their liabilities for acts of their agents, by inserting clauses in the application and policy restricting the powers of agents, must be recognized unless by so doing their contracts would become tainted with fraud, and in such case it will be presumed that the waiver was intended rather than the fraud. See at bottom of page 660 of 98 A. S. R.

We contend that the case at bar is one of those cases, wherein the company is estopped from setting up non-payment of the first premium after delivery of the policy, in which payment of the first premium is acknowledged, such as in the policy involved in this suit. Furthermore we contend that the agent, Mr. Feazell, who had the power to solicit insurance, deliver the policy and collect the first premium, waived for his company the condition imposed by his company requiring and instructing him not to deliver the policy until a satisfactory health certificate should be obtained by Mr. Feazell, the reason for this contention being that this condition was not a part of the policy, nor of the application therefor, and was uncommunicated to the insured, according to the finding of the jury.

Our own court is authority for this position. *Fidelity Mutual Life Ins. Co.* v. *Elmore,* 71 So. 305; 14 R. C. L. 968, sec. 141; *Britton* v. *Metropolitan Life Ins. Co.,* 165 N. Car. 149; *Illinois Central Life Ins. Co.* v. *Wolf,* 37 Ill. 354, 87 Am. Dec. 251; *Trager* v. *Louisiana Equitable L. Ins. Co.,* 31 La. Ann. 235; *Dobyns* v. *Bay State Ben. Asso.,* 144 Mo. 95, 45 S. W. 1107; *Kendrick* v. *Mutual Ben. Life Ins. Co.,* 124 N. Car. 315, 32 S. E. 728, 70 A. S. R. 592; *Harrington* v. *Mutual Life Ins. Co.,* 21 N. D. 447, 131 N. W. 246, 34 L. R. A. N. S. 373; *Southern Life Ins. Co.* v. *Booker,* 9 Heisk. (Tenn.) 606, 24 Am. Rep. 344; *Kline* v. *National Ben. Asso.,* 111 Ind. 462, 11 N. E. 620, 60 Am. Rep. 703.

In all these cases the doctrine of estoppel is applied, and they all hold that, as against the beneficiary, the insurance company is estopped to deny the payment of the

premium acknowledged in the policy. Furthermore, this rule is placed on the ground of public policy.

*Teutonia Life Ins. Co.* v. *Anderson,* 77 Ill. 384. Upon this question see also the note on "conclusiveness of acknowledgment of receipt of premium in Life Insurance Policy," Ann. Cas. 1915 D. 366, where it is stated that the doctrine that an acknowledgment of the receipt of the premium in a life insurance policy conclusively estops the insurer from averring or proving its non-payment for the purpose of denying the existence of the contract of insurance, is clearly distinguishable from cases in which the insured gives his note for the premium, and agrees that if his note is not paid at maturity, the policy shall become void.

Regarding the health certificate. Surely it is the law that the requirement of the insurance company as to the health certificate in this case cannot operate to defeat recovery upon the policy, unless it be satisfactorily shown that the insured had notice of such requirement. There was no notice to the insured of such requirement in the application or in the policy. The insured is not presumed to know the rule of the company on that score. Knowledge must be brought home to the insured that such a rule does exist, and that the health certificate must be furnished by him. *Kendrick* v. *Mutual Ben. Life Ins. Co.,* 124 N. Car. 315, 32 S. E. 728.

In the case at bar the policy was delivered by mail, and the jury found that it was delivered by mail, unconditionally, for that question was submitted properly to the jury by the trial court. When the policy was actually delivered to the insured, being in good health at the time of such delivery, as was clearly shown, he had a right to retain the policy under the belief that all that was required of him was that he be in continued good health. After actual delivery of the policy, the company is estopped, in the absence of fraud, to assert that the policy is void because of ill health of the insured. 25 Cyc. 721; Fidelity Mutual Life Ins. Co. 1. Elmore

(Miss.), 71 So. 305. To state it another way: the provision in the policy that it should not be valid, unless the premium is paid while insured is in good health was waived by the delivery of the policy to the insured by Mr. Feazell, the agent of the company having authority to take the application, collect premium, and especially detailed to deliver the policy. 25 Cyc. 730, B. 14, R. C. L. 900, citing the excellent notes to the case of *Stephenson* v. *Allison,* 138 A. S. R. 62; and we especially call the court's attention to pages 61 and 62 of said notes, in which a full discussion of the waiver of both payment of premium and of health is had, showing that the weight of authority is in favor of our propositions of law stated above on these matters.

This is not in conflict with the decision in the case of *New York Life Ins. Co.* v. *O'Dom,* 56 So. 379, cited by counsel for appellant, for the reason that in the case at bar we have not the question of a forfeiture, by reason of the extension of time for payment of premium, or the waiver of any of the provisions of the policy, or any right or requirement of the insurance company, known to the insured, or with which the insured should be charged with notice, as in the O'Dom case. There is no attempt here of the agent, Mr. Feazell, to do any of the forbidden things, which could be done only by the president, vice-president, a second vice-president, a secretary, or the treasurer of the appellant company, of which the insured had notice. There is no clause or statement in the application or in the policy demanding any kind of health certificate to be furnished by the insured before the policy should take effect, and in accepting and retaining the policy, the insured violated none of the contractual terms of the application, or of the policy. The insurance company trusted Mr. Feazell, the agent, with the delivery, detailed him to deliver the policy, and surely the insurance company is bound by the manner in which the agent delivered the policy, which was unconditional.

The case of *Truly* v. *Mutual Life Ins. Co. of New York*, 108 Miss. 453, cited by counsel for appellant, has no application whatever, because that case was decided on the question of the attorney of the soliciting agent to vary the expressed terms of the contract, and it was held therein, as of course, that only a general agent could do such a thing as vary the terms of the policy. The health certificate in our case is entirely a different thing, because it was governed by a secret rule of appellant, and was uncommunicated to the insured, and the insured had a right to rely upon the policy itself, he being in good health at the time it was delivered to him by the authorized agent of appellant unconditionally. This same health certificate was the only requirement made by the company, when the policy was sent out from the Home Office for delivery, as already shown by the letter of the appellant accompanying the policy, and this requirement was not made known to the insured.

ETHRIDGE, J., delivered the opinion of the court.

This is an appeal from a judgment of the circuit court against the appellant for two thousand dollars. The facts briefly stated are as follows: In June, 1918, plaintiff's husband, Albert Truly Vaughan, applied in writing to the appellant for two five-year term policies of life insurance on his life, in the sum of two thousand dollars each, payable on his death to his wife. The application contained, among other things, a provision that the policy should not take effect unless and until the first premium shall have been paid during the applicant's continuance in good health, and unless also the policy shall have been delivered to, and received by, the applicant during his continuance in good health, except in case a conditional receipt shall have been issued as hereinafter provided. The applicant also agreed in the application that no agent or other person except the president, vice president, a second vice president, a secretary, or the treasurer of the insurance

company had power on behalf of the company to make, modify, or discharge any contract of insurance, to extend the time for paying a premium, to waive any lapse or forfeiture or any of the company's rights or requirements, or to bind the company by making any promise respecting any benefits under any policy issued under the application, or by accepting any representation or information not contained in the written application.

The application, with the medical examination, was transmitted to the home office of the company, and the company declined to issue the policy on the plan requested, but did issue two policies of ordinary life insurance for two thousand dollars each and transmitted them to the Mississippi agent for delivery. Vaughan declined to accept the policies tendered and they were returned and canceled. But thereafter the local agent induced Vaughan to accept one of the policies tendered by the company, and the company was notified to this effect, and made out and sent to its state manager a policy for two thousand dollars on the life of Vaughan, which policy on its face recited, "In consideration of the annual premium of fifty and 10/100 dollars, the receipt of which is hereby acknowledged and of the payment of a like amount upon each Twenty-third day of September hereafter until the death of the insured." Accompanying this policy was a letter to the company from its state manager, and also a blank application with blanks for a medical report. The letter to the state manager instructed him to deliver the policy on procuring a satisfactory certificate of health, or, to quote more exactly from the letter, "Policy No. 2503511 is forwarded, herewith, but before delivery you are to procure a satisfactory certificate of health." The state manager of the insurance company, on receipt of the policy with the inclosed blanks and letter, sent to the local agent the policy and blank application or certificate with the following letter:

"I send you herewith Policy No. 2503511. Amount $2,000. Prem. $50.10. Policy of Albert Truly Vaughan

is forwarded herewith, but before delivery you are to procure a satisfactory certificate of health. Please acknowledge receipt."

The local agent testified that he inclosed the policy, with the blank application for medical examination, with a letter therein addressed to Mr. Vaughan at Jackson, Miss., a copy of the letter reading as follows:

"They were rather slow about it, or else I overlooked matter for a time. But anyway I wrote second time and am pleased to hand you herewith policy as suggested. Note that I have had date moved up to date, as I do not think you should pay for about ninety days without having had the protection and in this way second premium not due until Sept.—Oct. 23, 1919, instead of June, 1919, as if original sent out. Necessary, however, to have enclosed form signed and witnessed by the examiner, Dr. Hunter. Please take this form to him on receipt of same, fix it, and mail to me. You can use thirty days if you care to on payment this premium from date of this form completion by Dr. Hunter. Amount for first year's premium twenty-seven dollars and five cents. This includes two dollars health certificate fee to the examiner. If you prefer settle this fee with the doctor and remit me twenty-five dollars and five cents premium. Trusting this satisfactory and to hear from you in due course," etc.

The deceased, Albert Truly Vaughan, died some days after the mailing of this policy, and after its receipt by him.

It appears from the plaintiff's testimony that she, in company with her husband, the deceased, went to the post office at Jackson, Miss., on their way to a picture show at night, and that her husband received the letter and opened it in her presence, the envelope containing only the policy of insurance, and containing no form nor letter nor instructions of any kind. That she examined the policy in the envelope and saw there was no inclosure with the policy. She testified that Vaughan was in good health at the time. A few days thereafter Vaughan went to New Or-

leans, and returned and developed a case of influenza, and died within a few days. The widow, the plaintiff, notified the company of the death, and requested forms to make out proof of death, which the company refused to furnish, contending that it had not delivered the policy and that the policy was not an obligation against the company, whereupon suit was brought upon the policy. The policy was attached to the declaration, and the application of the deceased for insurance upon which the policy was issued is made a part of the record.

The defendant filed the general issue, and also special pleas. The general issue denied that it undertook or promised, or that it was indebted in the manner and form as charged in the plaintiff's declaration. The special pleas, of which there were three, set forth that the said policy was never executed or delivered setting forth that the application made in June, 1919, was rejected by the company as applied for; and that the company, on the written medical examination or report of the medical examiner, declined to issue the policy as applied for, but tendered to the deceased ordinary life plan policies for said amount, which Vaughan declined to accept; that afterwards, in August, 1918, said Vaughan made known to the defendant that he was willing to accept one policy for two thousand dollars on ordinary life plan, and requested that such policy be executed, and thereupon defendant agreed to write such policy on his life, if he would furnish a new medical examiner's report showing his then state of health and physical condition to be as good as it was when the previous medical examination was made, and that the medical examiner's report was a condition precedent to the execution of any policy of insurance by the defendant on the life of the said Vaughan; that on the 23d day of September, 1918, the defendant prepared in writing in form a life insurance policy on Vaughan's life, the paper printed and written sued upon in this case, and transmitted the same to its manager, with instructions that it should not be delivered before receiving from him a satis-

factory certificate of health and report of the medical examiner showing his health and physical condition at the time, and that the said policy by its terms required as a condition to its validity that the first premium of fifty dollars and ten cents should be paid; that said Vaughan should be in good health at the time of its delivery to him; that its said manager forwarded the policy and directions to the local agent with instructions in writing not to deliver the policy to Vaughan until Vaughan should deliver to defendant a satisfactory certificate of health and a medical report; that said certificate was never delivered, and the premium was never paid. Issue in short was joined on these special pleas.

On the trial the local agent testified that he mailed the policy, together with the letter and forms above referred to, to the deceased Vaughan; that he had previously instructed Vaughan that it would be necessary to obtain a health certificate from the company's examining physician, Dr. Hunter. He also says that he had no authority to so deliver the policy. Various rules of the company furnished to its agents by the appellant were offered in evidence, limiting and restricting the authority of the agents in various ways in the discharge of their duties.

It was the duty of the agent to solicit policies and to collect premiums, and also to deliver policies. The trial court submitted the issues to the jury under instructions for the plaintiff and defendant. It gave one instruction for the plaintiff which reads as follows:

"The court instructs the jury for the plaintiff, if they believe from the evidence that the insurance policy introduced in evidence in this case was duly and legally issued by the regularly constituted authorities of the defendant company, the Mutual Life Insurance Company of New York, upon the life of Albert T. Vaughan, on the 23d day of September, 1918, and that said policy was duly received by the said Albert T. Vaughan while in good health, as testified to by the plaintiff, Margaret B. Vaughan, and that no other papers, letters, or written statements per-

taining to said policy were received by' said Albert T. Vaughan with said policy, and that no other conditions, or requirements affecting said policy were ever communicated to said Albert T. Vaughan, and that said Albert T. Vaughan died on the 18th day of October, of influenza and pneumonia, then the jury will find for the plaintiff an amount not to exceed the face value of said policy, to wit, two thousand dollars, together with six per cent. interest per annum thereon from March 12, 1919, to the present date, to wit, the 15th day of October, 1919."

For the defendant the court instructed that if the jury believed the agent delivered the policy in violation of instructions of the defendant they should find for the defendant.

The local agent testified that no health certificate was ever delivered to him. It appears from the evidence that Dr. Hunter was the physician who examined applicants for the company. He was not introduced as a witness as to whether the deceased was ever re-examined by him, but the local agent testifies that no medical certificate was ever furnished to him of any such examination.

It is insisted that there was no delivery of the policy in such sense as to bind the company. It was also insisted that there is no proof of the payment of the premium under the terms of the policy and the application for the policy, and the officers of the company whose depositions are taken, who have charge of this department of the company's business at its home office, testify that no premium was ever paid, as also does the local agent, while the plaintiff testifies that she has no knowledge of the payment of the premium. It will be first necessary to determine whether the policy was delivered, and, if it was delivered, it will then be necessary to determine the effect of the receipt contained on the face of the policy upon this question.

In *Stewart v. Coleman & Co.*, 120 Miss. 21, 81 So. 653, we construed section 2615, Code of 1906 (section 5078, Hemingway's Code), and held that the agent delivering a

policy of insurance under that section of the code was the agent of the company for that purpose, and gave effect to a delivery of a policy in the same manner and to the same extent as if it had been delivered by the principal. The section above referred to precludes an insurance company from delivering a policy through an agent in this state, and then avoiding the effect of such delivery. In the present case the delivery must be determined by the same rule that would govern had the proper officers of the company made the delivery. In sending a policy to an agent in this state for delivery, with instructions as to what to require, the instructions will not be binding upon the beneficiary in the policy, unless the beneficiary or the insured had knowledge of the conditions contained in the instructions to the agent. If the agent violated his instructions, without knowledge or acquiesence on the part of the beneficiary, or on the part of the insured, then the company must bear the consequences of the agent's violation of his instructions so far as the beneficiary and the insured are concerned. Under our statute, making the delivery by an agent a delivery by the principal, a contract becomes a Mississippi contract, and provisions in the rules or instructions to the agent in conflict with the statute will not be allowed to prevail.

The company issued the policy upon a medical examination conducted by its own officers, and if it intended not to deliver the policy until an additional health certificate was furnished it should have withheld the policy until that was received. The provision in the policy is that the proposed policy should not take effect unless the policy should have been delivered to, and received by, the insured during the continuance of good health. The question is then to be determined whether the applicant was in good health at that time. The health certificate, if one was furnished, is mere evidence of the fact of good health, and if the company delivered the policy when the insured was in good health, without requiring the certificate to be delivered prior to the delivery of the policy, it waived this

provision or requirement, and it is immaterial that the waiver occurred through the default of the agent or whether it was the default of the principal. The company cannot withhold from the insured the benefit of the policy which it delivered without bringing the conditions to the knowledge of the insured or the beneficiary. The proof on this point is conflicting. The plaintiff testifies positively that no papers other than the policy itself were inclosed in the envelope received by her husband, the insured. The agent testifies positively that he mailed the application and letter to the insured in the same inclosure that contained the policy. It is urged in argument that the inclosures may have gotten lost in the mail, and that this possibility would prevent a conflict of evidence upon the point involved. There is no fact in the record which would warrant the presumption that the inclosures were lost in the mail. There is no proof that the letter was opened, or rifled, or anything taken therefrom. Therefore the evidence upon this point was for the jury, and the jury resolved it in favor of the plaintiff.

We are next called upon to consider the effect of the receipt of the money contained in the face of the policy.

In *Britton* v. *Metropolitan Life Ins. Co.,* 165 N. C. 149, 80 S. E. 1072, Ann. Cas. 1915D, 366, it was held that an acknowledgment in a life insurance policy of the receipt of a semiannual premium is not a mere receipt, but a part of the contract, in so far as the insurer's right to forfeit the policy is concerned, and estops the insurer to claim a forfeiture because of the parol contract between the insured and the insurer's agent that the premium should be paid quarterly, pursuant to which agreement only payment of the quarterly permium at the beginning of the insurance term, instead of a semiannual premium, was made. It was held in this case, and by numerous authorities cited therein, that the receipt in such case is not a mere receipt which may be contradicted by parol proof. In the case note to this report to the Ann. Cas. 1915D, 366, the learned editor of this series says:

125 Miss—25

"The reported case is in accord with the weight of authority in holding that where a life insurance policy is delivered unconditionally, an acknowledgment in the policy of the receipt of the premium, estops the insurer in the absence of fraud to contest the validity of the policy on the ground of nonpayment of the premium."

And a large line of authorities are cited to sustain this statement. The rule seems to be that, as between the insurer and the insured for the purpose of collecting the premium, such receipt is not conclusive but is only *prima-facie* evidence of payment, but, as between the beneficiary and the insurer, a receipt is conclusive, being contractual. We think the rule is amply supported by authority, and so the policy is not void because the premium was not paid before delivery, if in fact it was not paid, which seems to be proven, the insured being dead and unable to testify as to this fact.

It is insisted that the instruction above set out for the plaintiff is erroneous, and the judgment should be reversed for that reason. We do not undertake an analysis of the various grounds of objection to this instruction; nor does it, when considered in connection with the instructions given for the defendant, omit any legal requirement. Taking the instructions as a whole, one as supplementing the other, we think the law was announced as favorably to the defendant as it could be. Indeed, the plaintiff was required to meet more than the law imposed upon her.

*The judgment will be affirmed.*