ÆTNA INS. CO. *v.* SINGLETON.

(Division B. Nov. 11, 1935. Suggestion of Error Overruled Jan. 13, 1936.)

[164 So. 13. No. 31871.]

**Watkins & Eager**, of Jackson, and **A. W. Cooper**, of Forest, for appellant.

O. B. Triplett, Jr., of Forest, for appellee.

Argued orally by **W. H. Watkins, Sr.,** for appellant, and by **O. B. Triplett, Jr.,** for appellee.

**Ethridge, P. J.,** delivered the opinion of the court.

The appellee, A. A. Singleton, filed suit in the circuit court of Scott county against the appellant for the sum of two thousand five hundred dollars on a two thousand dollars fire insurance policy issued by the appellant to the appellee covering his residence in Scott county. The policy was dated April 18, 1929, and was to cover a period of five years, and the property was destroyed by fire on December 12, 1930. The first installment was paid at the time of the delivery of the policy, and a note was given for the balance of the five years' premium, payable in installments annually, and due on May 30, 1930, and annually thereafter. The note that was due on May 1, 1930, was not paid. The policy contained the following stipulation:

"It is understood and expressly agreed that this company shall not be liable for any loss or damage that may occur to the property herein mentioned while any installment of the installment note given for premium upon this policy remains past due and unpaid; or while any single payment, promissory note (acknowledged as cash or otherwise) given for the whole or any portion of the premium remains past due and unpaid. Payments of notes and installments thereof must be made to the said Ætna Insurance Company at office in Atlanta, Georgia, or to a person or persons specially authorized to collect the same for said company. And it is understood and expressly agreed that the failure of the assured to receive notice of the approaching maturity of the premium note or notes, or any installment thereof, shall not operate to render the company liable for any loss or damage while such note or notes, or installments thereof, remain due and unpaid. The company may collect by suit or otherwise any past due notes, or installments thereof, and a receipt from the Atlanta office of the company for the payment of past due notes or installments must be re-

ceived by the assured before there can be a revival of the policy, such revival to begin from the time of said payment, and in no case to carry the insurance beyond the end of the original term of this policy. In settlement of any loss under this policy, the company may deduct therefrom the entire amount of any unmatured note given in whole or in part as a consideration of this policy, whether such note is payable in installments or otherwise.''

The note given for the premiums due contained the following stipulation:

''And it is hereby agreed that in case any of the installments herein named shall not be paid at maturity, or if any single payment promissory note (acknowledged as cash or otherwise), given for the whole or any portion of the premium for said Policy shall not be paid promptly when due, this Company shall not be liable for loss during such default, and the said policy shall lapse until payment is made to this Company at the Farm Department at Atlanta, Ga., and the whole amount of installments or notes remaining unpaid on said policy may be declared earned, due and payable, and may be collected by law. In settlement of any loss under above policy, this company may deduct therefrom the entire amount of unmatured installments of this note. This note is given in payment for above policy of insurance.''

The appellee, Singleton, contended that, after receiving notice of the default in the premium on May 1, 1930, he approached J. Knox Huff, agent of the appellant at Forest, Mississippi, who wrote and delivered the policy, in reference to an extension of time in which to make payment, representing to him that he, the appellee, was pressed for money in his farming operations, having used his salary as county supervisor and other funds therein, and that he would be unable to pay the premium until after making his cotton crop for that year, and that Huff stated to him as follows:

"Q. State whether or not you asked for a specific length of time from Mr. Huff? A. Well, he told me that if it didn't suit my convenience to pay it right now it would be all right, I told Mr. Huff—Mr. Huff said it would be all right, and I told him it would suit my convenience to wait, 'I know I can pay it by the first of the year,' and he says 'I can and will take it up with the company and guarantee to you that you won't be worried any more. . . .

"Q. When you talked to Mr. Knox Huff, you say in September, when he spoke to you about it, he told you that the company might probably extend it for you? A. No, he didn't say that. He told me that if it doesn't suit my convenience to pay it right then, it would be perfectly all right; that he would take it up with the company and guarantee that it would be all right. . . .

"Q. What did you say to Mr. Huff? A. I came out here to see Mr. Huff. I told him I had gotten a letter from them and that they were threatening to sue me.

"Q. All right, what did he say? A. I told him I didn't want to be sued, and I didn't want to lose the protection, and he told me, he says, 'If it doesn't suit your convenience to pay it right now, it will be perfectly all right.'

"Q. To do what? A. He says, 'If the company doesn't realize that your note is good for that amount, I do,' and says, 'I will take it up with the company, I can do it and will do it, take it up with the company, and guarantee that you won't be bothered.'

"Q. That is what he said to you? A. Yes sir. I told him that it would suit my convenience and I knew that I could pay it off by the first of the year, and he says, 'That will be perfectly all right.'

"Q. And he said he would take it up with the company for you? A. Yes. He is all the man that I ever knew in the transaction, I never knew anybody else, and I thought he knew what he was doing."

Huff denied this conversation, and testified that he

had no authority to extend the time in which to pay the note, and that he did not communicate with the company and secure any such extension; that Singleton did have a conversation in which he stated to him that he (Singleton) did not want to be sued and he realized that he would not be entitled to protection during the period of suspension, or words to that effect.

The general agent of the insurance company testified that Mr. Huff had no authority to grant an extension of payment of a note, or to collect a note, unless it was actually placed in his hands for collection.

In an agent's agreement, among other things, Huff agreed to collect without additional expense if a note was placed in his hands for that purpose. The superintendent of the insurance company, on this branch of his business, also testified that he and the special agent in Mississippi, Mr. Hall, only had any authority to extend the time of payment of a note on behalf of the company.

Mr. Hall, with Mr. Huff, called twice at the appellee's residence to discuss payment of the note, but did not find him at home. The last visit was just a few days before the fire, and Mr. Hall reported on the note as follows:

"No. 729274. Assured A. A. Singleton. Due May 1st, 1930. Agency Forest. . . . I made second trip to see this man but away from home. Huff thinks he will be able to collect by rewriting." In this report he also stated that he had inspected the property on December 9, 1930; that he had not talked to the debtor about the note; that he thought it was collectible by law, but that he did not recommend referring the note to an attorney for collection until Mr. Huff advised doing so.

After the fire occurred, the appellee reported the loss, and the company declined payment thereof. Appellee consulted two different attorneys, but neither of them instituted suit. In 1934, the appellee consulted the present attorney who gave notice that he had been assigned a

part of the proceeds, and requested papers for proof of the loss should they be required. The company again denied any liability, and the appellee brought this suit.

On April 15, 1930, prior to the maturity date of the first installment note, the insurance company gave notice to the appellee of the due date of the note, the amount thereof, and requested payment. On May 7th, after the due date of the first installment note, they sent a second notice to the appellee of the amount due and requested a remittance to cover. This notice was sent by registered mail, and the return receipt was signed by Singleton and returned to the insurance company, but no remittance was sent with it. On June 14, 1930, another notice was sent to Singleton by the insurance company calling his attention to the fact that the note due on May 1st was unpaid. No answer having been made to this, on July 3d, the superintendent of the insurance company again wrote to Singleton calling his attention to the note due May 1, 1930, but no remittance was made to cover.

There was a judgment for the appellee for two thousand dollars with interest, the total amount being two thousand five hundred dollars. At the conclusion of the trial, the appellant requested a directed verdict which was refused, and this appeal is from said judgment.

It is contended on appeal that Huff was the general agent of the insurance company, and that his agreement, as testified to by Singleton, had the effect of extending the payment of the note until January 1, 1931, and that the company could not avoid the loss because of this agreement of the general agent. It was also contended that there was evidence of the company's knowledge of the general agent's agreement.

A great array of authorities has been cited by both sides upon the various questions embraced in this suit, but we think, from a consideration of Travelers' Fire Ins. Co. v. Price, 169 Miss. 531, 152 So. 889, that the provisions of section 5196, Code of 1930, do not apply so as

to make Huff the agent of the company in making the agreement with Singleton to extend the time of payment of his note. Under this case, the soliciting agent of an insurance company is without power to modify the contract of insurance or waive the conditions. It was also held therein that the stipulation in an automobile fire and theft policy that no agent of an insurance company has the power to waive the terms of the policy unless a waiver be written upon or attached to the policy, and that the assured was affected with notice of such stipulation whether he actually knew thereof or not. It was further held that the alleged waiver of sole and unconditional ownership and public conveyance for hire clauses in automobile fire and theft policy, by the soliciting and collecting agent without written indorsement on the policy, was ineffective and not binding on the company. In other words, in that case we held that the waiving provision in the contract by the soliciting and collecting agent was beyond the scope of his authority and was not binding on the insurance company. It is therein settled that a soliciting agent, such as the proof shows Huff to be, was without authority after the delivery of the policy. Various cases in this state were reviewed in both the main and the dissenting opinions. It is true that the writer here dissented in that case, but when this court decides a case by the majority of its members, it is binding upon all judges, lawyers, and litigants of the state thereafter. A judge may, in his personal and private capacity (borrowing the expression from the attorney, Wemick, portrayed by Dickens), still entertain his original opinion, but in his public and judicial capacity he is obliged to accept the law as delivered by the majority of the court until such decision is overruled.

The opinion above referred to construes the law so as to constitute the agent here a mere agent of limited authority, and one at common law and not under section 5196, Code of 1930. It is the rule at common law that

persons dealing with an agent must inquire as to his authority, and if the agent has no authority, the principal is not bound by his agreements, unless the principal either ratifies them, or so acts with reference to them as to constitute it a waiver or an estoppel.

In the case of Home Ins. Co. v. McFarland et al., 142 Miss. 558, 107 So. 754, 755, it was held that: "The circuit court seems to have held that the notes were void and without consideration because of the condition that they owed the notes from default in payment thereof, and the insurance protection was likewise suspended during the time of said default, to which view we cannot subscribe. We know of no reason why people cannot contract for the suspension of a contract and renewal or reinstatement of the provisions of the contract upon the payment of the arrearage; nor can we see that there is any merit in the contention that, because the insurance is for a term of years, each year named in the contract is a separable and divisible part of the contract independent of the others. Such is not the fair construction of the language of this contract. Neither do we think there is any merit in the contention that, since the company was not liable on its contract of insurance during its suspension, the insured was not liable on his note."

To the same effect is the case of Hartford Fire Ins. Co. v. Dickerson, 160 Miss. 439, 134 So. 177, which was also a case involving suspension on default of premium note, and reinstatement on payment of arrearage.

In each of these cases, the insurance company was suing to collect premium notes, and no loss was shown to have occurred.

In the case at bar, the suit is by the assured for recovery on the policy after a loss has occurred, and while payments were past due and the policy was in suspension.

Much is said in the briefs about the insurance company holding on to the note and repudiating the loss.

It is not before the court now, nor was it before the

court in the cases of Hartford Fire Ins. Co. v. Dickerson, supra, and Home Ins. Co. v. McFarland, supra, as to whether the insurance company could collect the notes after the loss occurred while refusing to recognize its liability for the loss. Whether the company can keep its cake and eat it too is not now before the court and was not in the cases cited, and it is not the practice of this court to decide questions until they are properly reached in appropriate litigation. The company would have the option, at least, to elect whether it would proceed on the note, or recognize the liability, whether it would repudiate its liability, and abandon its right under the note, or pay the loss. It will be time enough to decide whether it can exercise both rights when a suit for that purpose is brought before the court.

It follows from what we have said that the judgment of the court below was erroneous, and that the peremptory instruction requested by the appellant should have been granted.

Reversed and rendered.