SAUCIER *v.* LIFE & CASUALTY INS. CO. OF TENNESSEE.

(In Banc.   Nov. 11, 1940.)

[198 So. 625.   No. 34220.]

Gex & Gex, of Bay St. Louis, for appellant.

**R. C. Cowan** and **Charles R. Galloway**, both of Gulfport, for appellee.

**Smith, C. J.,** delivered the opinion of the court.

This is an action by the appellant on a life insurance policy in which she is the beneficiary, issued by the appellee to her deceased husband, Antoine J. Saucier.

At the close of the appellant's evidence, the court sustained a motion by the appellee to exclude it, and thereafter directed the jury to return the verdict for the appellee, which was done, and there was a judgment accordingly.

It appears from the record, and the appellant's evidence, that the policy provides that it "shall not take effect until the first premium shall have been paid in cash, and this contract delivered and accepted during the lifetime and good health of the insured . . . Only the President, Vice-President, Secretary, Assistant Secretary, Actuary, or Treasurer has power on behalf of the Company to make or modify this contract." Latimer, a soliciting agent for the appellee, obtained from Saucier a written application for the issuance of the policy, which application recites that "It is understood and agreed: . . . 2. That no agent, medical examiner or any other person, except the officers of the Company, have power on behalf of the Company: (a) to make, modify or discharge any contract of insurance, (b) to bind the Company by making any promises respecting any benefits under any policy issued hereunder. . . . 4. That the Company shall incur no liability under this application

until it has been received, approved, and policy issued and delivered, and the full first premium stipulated in the policy has actually been paid to and accepted by the Company during the lifetime of the applicant. . . ."

The policy was delivered by Latimer to the appellant. According to her evidence, she did not have sufficient money with which to pay the initial premium on the policy, and told him "to come back later that evening, and he said 'Here is your policy, if anything happens to your husband today or tomorrow your policy is in force.' " Latimer did not return for the collection of the premium, and Antoine Saucier died the next day without the premium having been paid. The appellee denied liability on the policy, and this suit was brought by the appellant for its collection.

This case was before this court in 181 Miss. 887, 179 So. 851. The declaration then alleged that Latimer was a general agent of the appellee. On the return of the case to the court below, the declaration was amended by striking the general-agent allegation therefrom and inserting in lieu thereof the words "local agent for said company."

Under the terms of the policy and of the application therefor, Latimer was not authorized to waive the advance payments of the initial premium thereof when delivering the policy unless Section 5196, Code 1930, invoked by the appellant, increased his authority in this connection and conferred on him when delivering the policy all the powers the appellee had itself in this connection,—in other words, raised him pro hac vice from a special to a general agent. This section is as follows: "Every person who solicits insurance on behalf of any insurance company, or who takes or transmits, other than for himself, an application for insurance, or a policy of insurance, or who advertises or otherwise gives notice that he will receive or transmit the same, or who shall receive or deliver a policy of insurance of any such company, or who shall examine or inspect any risk, or receive, collect or transmit any premium of insurance, or

make or forward a diagram of any building, or do or perform any other act or thing in the making or consummation of any contract of insurance, for or with any such insurance company, other than for himself, or who shall examine into or adjust or aid in adjusting any loss for or on behalf of any such insurance company, whether any of such acts shall be done at the instance, or request, or by the employment of the insurance company, or of, or by any broker or other person, shall be held to be the agent of the company for which the act is done or the risk is taken as to all the duties and liabilities imposed by law, whatever conditions or stipulations may be contained in the policy or contract; such person knowingly procuring by fraudulent representations, payment, or the obligation for the payment, of a premium of insurance, shall be punished by a fine of not less than one hundred dollars nor more than five hundred dollars, or be imprisoned for not more than one year.''

The words ''as to all the duties and liabilities imposed by law'' ex vi termini refer not to duties and liabilities that grow out of the contract of insurance, such duties and liabilities being determined by the provisions of the contract itself, but to duties and liabilities imposed on insurance companies and their agents by law outside and independent of the provisions of the contract of insurance.

The statute appears in the Code of 1930 in Chapter 127, which covers the subject of insurance. The chapter is divided into eighteen articles, each of which deals with separate matters appropriate to the heading given the article. Section 5196 appears in Article 10, headed ''Agents;'' and all but three of its sections deal with duties and liabilities of persons acting or purporting to act as agents for insurance companies. One of these sections (5197) makes ''an insurance agent . . . personally liable on all contracts of insurance unlawfully made by or through him, directly or indirectly, for or in behalf of any company not authorized to do business

in the state." Another (5198) requires every agent of the insurance company authorized to do business in this state "to obtain annually from the commissioner of insurance a certificate under the seal of his office showing that the company for which he or she is agent or organizer is licensed to do business in this state, and that he or she is an agent or organizer of said company and duly authorized to do business for it." Another (5206) permits foreign insurance companies to transact business in this state only through regularly commissioned licensed agents located in this state. Another (5209) imposes a penalty for acting as agent for an insurance company without a license therefor. The section applies to a person who does nothing more than "advertises or otherwise gives notice that he will receive or transmit an application for an insurance policy."

.The manifest purpose of Section 5196, therefore, is to enable the state to effectually supervise insurance companies and their agents. This Court so held in Cain v. State, 103 Miss. 701, 60 So. 731, 732, the first case in which the statute was considered by this Court, wherein the Court said: "The statute . . . was designed to protect citizens of the state, as well as insurance companies authorized to do business in the state. . . . The object of the statute was to keep wild-cat [insurance] companies, or companies not complying with the law, from doing business in the state." To the same effect, see Wilkinson v. Goza, 165 Miss. 38, 145 So. 91.

The correctness of this holding is reenforced by an examination of the history of the statute. It first appeared as Section 1085 of the Revised Code of 1880, being one of a group of sections dealing with how foreign insurance companies may do business in this state. The section there reads as follows: "Any person who solicits insurance on behalf of any insurance company not organized under or incorporated by the laws of this state" etc. It then proceeds practically as in the Code of 1930, except the insurance company referred to each time is a

foreign insurance company, and the section closes with the words, "imposed by the laws of this state." There can be no doubt that the purpose of the section in that Code was as hereinbefore stated.

It appears as Section 2327 of the Annotated Code of 1892, and is not limited to foreign insurance companies. Chapter 69, Code of 1906, created a Department of Insurance, placing both domestic and foreign insurance companies under the supervision thereof. and making certain requiremetns of the agents of both. The section under consideration appeared in that chapter as Section 2615—practically as it now appears in the Code of 1930.

The statute accomplishes the purpose hereinbefore set out: (1) by making all persons doing the acts set forth therein in making, or adjusting a loss under, an insurance policy "the agent[s] of the company for which the act is done or the risk is taken as to all the duties and liabilities imposed by law," and (2) by rendering ineffective any condition or stipulation in the policy to the contrary. No reference is made in the statute to any conditions, stipulations, or agreements in the policy, except such as negative the agency for the insurance company of the persons referred to in the statute, and no other conditions, stipulations, or agreements in the policy are affected thereby. It "undertakes" as said by the Supreme Court of the United States in Mutual Life Insurance Company v. Hilton-Green, 241 U. S. 613, 36 S. Ct. 676, 680, 60 L. Ed. 1202, when construing a similar Florida statute, "to designate as agents certain persons who in fact act for an insurance company in some particular; but it does not fix the scope of their authority as between the company and third persons, and certainly does not raise special agents, with limited authority, into general ones, possessing unlimited power." To the same effect are Sun Insurance Office v. Scott, 284 U. S. 177, 52 S. Ct. 72, 76 L. Ed. 229; Hartford Fire Ins. Co. v. Walker, 94 Tex. 473, 61 S. W. 711; Security Ins. Co. v. Cameron, 85

Okl. 171, 205 P. 151, 27 A. L. R. 444, 461; John R. Davis Lumber Co. v. Hartford Fire Ins. Co., 95 Wis. 226, 70 N. W. 84, 37 L. R. A. 131; Wood v. Firemen's Fire Ins. Co., 126 Mass. 316; Maryland Cas. Co. v. Campbell, 5 Cir., 255 F. 437, 441; Fidelity-Phenix Fire Ins. Co. v. Handley, 5 Cir., 296 F. 902, 904.

It follows, therefore, unless the cases now to be examined prevent us from so holding, that Latimer was without authority to deliver this policy unless and until the initial premium thereon was paid, of which fact the application for the policy and the policy itself advised the insured, and the delivery by him of the policy without collecting this premium imposed no obligation on the appellant.

Stewart v. Coleman & Co., 120 Miss. 28, 81 So. 653; Hartford Fire Ins. Co. v. Clark, 154 Miss. 418, 122 So. 551; Aetna Ins. Co. v. Lester, 170 Miss. 353, 154 So. 706; Home Ins. Co. v. Thornhill, 160 Miss. 787, 144 So. 861; Aetna Ins. Co. v. Singleton, 174 Miss. 556, 164 So. 13; St. Paul Fire & Marine Ins. Co. v. Loving, 163 Miss. 114, 140 So. 727, may be here left out of view, for they do not deal with limitations in a policy of insurance on the authority of special agent, but simply charge the insurance company issuing the policy with notice of facts known to the agent when the policy was delivered by him—a liability or burden "imposed by law" on an agent's principal.

The cases necessary to be here considered are Capital Paint & Glass Co. v. St. Paul Mercury Ind. Co., 180 Miss. 341, 176 So. 729; Interstate Life & Accident Ins. Co. v. Ruble, 160 Miss. 206, 133 So. 223; Lamar Life Ins. Co. v. Kemp, 154 Miss. 890, 124 So. 62; Mutual Life Ins. Co. v. Vaughan, 125 Miss. 369, 88 So. 11, in each of which this Court held that the effect of the statute is to make all persons who do any of the acts specified therein the general agent of the insurance company affected thereby as to the act performed with the same authority "that appellee (the insurance company) itself had," although the

company may have conferred on him only special and limited authority relative thereto.

In the Vaughan, Kemp and Ruble cases, an agent of an insurance company authorized by it to solicit the taking out of life insurance policies and deliver them when issued by the company, was held to be authorized by the statute, in the Vaughan case, to deliver a policy without requiring from the insured a certificate that he was then in good health, contrary to the instructions of the insurance company, in the Kemp case, to waive the payment of the initial premium of the policy required by the terms of the policy to be paid before delivery, and in the Ruble case, to agree with the insured that the first and second premiums of the policy might be paid by the cancellation by the insured of a debt due him by another employee of the insurance company instead of in money as required by the policy. In the Capital Paint & Glass Co. case [180 Miss. 341, 176 So. 730], the agreement of the insurer was to indemnify and save harmless the insured "from any loss it might suffer on account of personal injuries to its employes caused by its negligence." An agent of the insurance company when adjusting its liability for an injury to one of the insured's employees agreed, without it appearing that he was authorized by the insurance company so to do, to reimburse the insured for money paid by it to its injured employee for which the policy imposed no liability on the insurer. The Court held that this agent was authorized by this statute to make this agreement.

These cases are in conflict with Travelers' Fire Ins. Co. v. Price, 169 Miss. 531, 152 So. 889; American Bankers Ins. Co. v. Lee, 161 Miss. 85, 134 So. 836; and Mutual Life Ins. Co. v. Hebron, 166 Miss. 145, 146 So. 445, and seem manifestly to us to have wrongly construed the statute causing it to interfere without perceptible justification therefor with liberty of contract, and are, therefore, mischievous and should be and are overruled.

The Vaughan and Kemp cases were decided before the

re-enactment of the statute in the Code of 1930, and if it be said that the legislature thereby adopted the construction of the statute put on it by those two cases, our answer is that a statute with the meaning and effect which these cases construe this statute to have would violate the provisions of Section 14 of our State Constitution and of the 14th Amendment to the Federal Constitution that "no person shall be deprived of life, liberty, or property except by due process of law," and therefore beyond the constitutional power of the legislature to enact.

The word "liberty" as used in these sections of the two constitutions includes liberty of contract and the liberty of contract guaranteed by them is freedom from arbitrary or unreasonable restraint. In order for a statute to survive when confronted with due process of law, it must not appear to be arbitrary or capricious, but must have a reasonable relation to a legitimate end. To raise an insurance company's special agent with limited powers, into its general agent when acting for it in the particulars specified in the statute, with authority to then make material changes in a policy of insurance issued by the company, manifestly has no relation to the end or object for the accomplishment of which this statute was enacted, or to any other imaginable legitimate legislative end.

Affirmed.

**Ethridge, J.,** delivered a dissenting opinion.

I dissent from the majority opinion herein, as I think it is clearly wrong in the construction of section 5196 of the Code of 1930, and in overruling certain cases named in the opinion.

A careful reading of section 5196 shows that a person who does the things named in the statute on behalf of the insurance company is the agent of the company for that purpose, although not a general agent. The knowledge of the agent and his acts on behalf of the company, are

the acts of the insurance company itself, or of its principal officers, or even of the board of directors.

After setting out the various points in the statute constituting such person an agent of the company, the section continues: "Shall be held to be the agent of the company for which the act is done or the risk is taken as to all the duties and liabilities imposed by law, whatever conditions or stipulations may be contained in the policy or contract." And the section then provides that any person knowingly procuring through fraudulent representations the payment, or obligation for the payment, of a premium of insurance, shall be punished by a fine of not less than $100 nor more than $500, or be imprisoned for not more than one year.

The majority opinion sets out some purposes of this statute, but not all. One purpose of the statute is to make the insurance companies responsible for the acts of their agents, and to cause them to select as their agents qualified and proper persons. The statute has been construed by this Court in numerous decisions, and has been re-enacted by the legislature under such constructions; and through such re-enactment without change the construction becomes a part of the statute itself.

In Stewart v. Coleman & Co., 120 Miss. 28, 81 So. 653, decided at the March term, 1919, it was held that the statute involved, being then section 2615 of the Code of 1906, section 5078 of Hemingway's 1917 Code, and section 2327 of the Annotated Code of 1892, makes the agent delivering an insurance policy the agent of the company for that purpose; and the company cannot avoid a policy because of other insurance if the company's agent who wrote the insurance had knowledge of the fact. In that case the statute was distinctly held to make the knowledge of the agent the knowledge of the company as to the existence of such other insurance, which other insurance, but for such knowledge, would have avoided the policy.

It will be noted that the statute nullifies all stipulations in the policies which would avoid the policies in the absence of knowledge on the part of the agent, where the agent acted in a particular capacity, with knowledge of the facts. While the case of Stewart v. Coleman & Co., supra, seems to have been the first in which the statute was held to control, the same rule had prevailed for many years prior thereto.

For instance, in Big Creek Drug Co. v. Stuyvesant Ins. Co., 115 Miss. 333, 75 So. 768, it was held that the agent, in delivering a policy and receiving a premium with knowledge that the insured had no iron safe as stipulated in the policy, bound the company, estopping it from effecting forfeiture of its policy; and that this was true whether the agent was a soliciting or a general agent.

In the case of Stewart v. Coleman & Co., supra, it was said: ''Section 2615, Code 1906 (section 5078, Hemingway's Code), makes the agent delivering an insurance policy the agent of the company for that purpose and the company cannot avoid a policy because of other insurance, if the agent writing the insurance for the company had knowledge of the facts.''

In Aetna Ins. Co. v. Smith, McKinnon & Son, 117 Miss. 327, 78 So. 289, L. R. A. 1918D, 1158, it was said: ''Under a fire insurance policy which provided that the policy should be void if additional insurance should be procured on the property by insured, such provision was waived where the agent of the insurer knew of and wrote an additional policy upon the property for a number of years and the mere fact that the insured had such additional insurance canceled and took a policy for such additional insurance in a different company did not work a forfeiture of the main policy under such over insurance clause.''

In Phoenix Ins. Co. v. Randle, 81 Miss. 720, 33 So. 500, it was held that, ''A fire insurance company which delivers a policy with knowledge of facts upon which, but for such knowledge its validity might be questioned, can-

not avail of such facts after a loss in avoidance of liability on the policy.'' In the opinion in that case the Court said: ''The agent of the insurance company who solicited the risk did not rely on Mr. Randle's statement for anything. He went in person and examined the building —knew that the doctor's shop was upstairs, and knew that Randle kept no iron safe, and did not intend to get one until the following fall; and the company, therefore, is bound as upon both waiver and estoppel. 'It will not be presumed that the party making the contract intended to perpetrate a fraud, by putting in a condition which he knew would prevent it from taking effect.' [Citing a Texas case]. The agent knew that, 'as warranties of existing facts, they were false'; and, 'to deliver a policy with full knowledge of facts upon which its validity may be disputed, and then to insist upon these facts as grounds of avoidance, is to attempt a fraud,' and 'the courts will not hear the insurance company to say that it knowingly made and delivered to the assured what it knew at the time to be an invalid policy, and that therefore it is not liable for the loss sustained.' '' See, also, Agricultural Ins. Co. v. Anderson, 120 Miss. 278, 82 So. 146; Mutual Life Ins. Co. v. Vaughan, 125 Miss. 369, 88 So. 11, decided at the March term, 1921.

The last-named case is almost identical with the case at bar. In St. Paul F. & M. Co. v. Loving, 163 Miss. 114, 140 So. 727, the case was based on the statute, although it was stated that the agent there was a general agent, because of his various duties. Home Ins. Co. v. Thornhill, 165 Miss. 787, 144 So. 861, is expressly put on the section now under review. The case of Aetna Ins. Co. v. Lester, 170 Miss. 353, 154 So. 706, was definitely based on the Code section. In Aetna Ins. Co. v. Singleton, 174 Miss. 556, 164 So. 13, it was held that a soliciting agent, after delivery of the policy, could not bind the company, as his agency terminated on the delivery of the policy.

Many decisions could be cited antedating the case of Stewart v. Coleman & Co., supra, to show that the agent

who performed a particular act bound the company within the scope of such act as he was authorized to do, or did, and which was accepted by the insurance company.

In Hartford Fire Ins. Co. v. Clark, 154 Miss. 418, 122 So. 551, the insurance company was held liable, and to have waived policy stipulations, because of the knowledge on the part of the agent who delivered the policy that representations made in the application were, in fact, untrue—it being held that the knowledge of the agent was the knowledge of the company itself, as to such facts as the agent knew. In that case the company undertook to provide that only its officers in Atlanta, Georgia, would be authorized to pass on the risk; and the policy provided for its avoidance if misrepresentations of the facts were made by the insured. An examination of the main opinion and the dissent in this case will show that this holding was predicated upon section 5196 of the Code of 1930, as then set out in the Code of 1906. This decision was made at the March, 1929, term of the Court. The cases overruled in the majority opinion are all squarely based on the statute, and are sound in principle. They should not be overruled, even though they do not meet the views of the Judges constituting the majority of the Court at this time, for many contracts have been made under them, and overruling them interferes with the contractual rights of thousands of policyholders, who will lose their rights.

I shall not undertake to set forth all of the decisions, or to review all of those referred to in the majority opinion here; but the decisions referred to in this opinion construed the law in regard to the effect of the statute; and by the re-enactment of the statute without change in 1930, the construction so placed upon it became a part of the statute itself. Where a statute was re-enacted after its erroneous construction the Court must assume that the re-enactment was with full knowledge on the part of the legislature of such construction. Smith v. Richardson, 2 Miss. Dec. 287. Re-enactment of a statute

which has been judicially construed is an adoption of the construction, unless intention to the contrary appears in the statute so re-enacted. White v. Illinois Cent. R. Co., 97 Miss. 91, 52 So. 449, 55 So. 593; Hamner v. Yazoo Delta Lbr. Co., 100 Miss. 349, 56 So. 466; Henry v. Henderson, 103 Miss. 48, 60 So. 33. Construction of a statute by the Supreme Court should control construction of the same statute subsequently re-enacted. Womack v. Central Lbr. Co., 131 Miss. 201, 94 So. 2. Later re-enactment of construction by the Supreme Court adopts the construction of the Court. Burks v. Moody, 141 Miss. 370, 106 So. 528, 107 So. 279.

The legislature, by re-enacting statute in the same terms adopts the construction placed on the statute by the highest court of the state, etc.

"Where a statute has been construed by the Supreme Court, and afterwards re-enacted in substantially the same terms, the Legislature by such re-enactment adopts such construction along with the statute." White v. Williams, 159 Miss. 732, 132 So. 573, 574, 76 A. L. R. 757.

"Construction of a statute, subsequently re-enacted, as prohibiting judges from instructing juries without written requests, will not be departed from." Masonite Corp. v. Lochridge, 163 Miss. 364, 140 So. 223, 141 So. 758.

The same rule prevails at common law, and in practically all the states. In Black's Interpretation of Law, (2 Ed.), 596, it is said: "When the legislature revises the statutes of the state after a particular statute has been judicially construed, without changing that statute, it is presumed that the legislature intended that the same construction should continue to be applied to that statute." And in the same work, at page 607, it is said: "A statute literally or substantially re-enacting a prior statute after its words have received a judicial interpretation must be regarded as adopted with knowledge of such construction and with the intention that it should

thereafter be interpreted in the same way." See, also, 25 R. C. L. 1075, sec. 297; 59 C. J. p. 1061, sec. 625.

There is sound reason for the rule as to re-enactment of the statute without change, carrying with it the construction placed upon it by the highest court of the state. It is very desirable that stability be had in the decisions of such court. Every person and every officer of the state other than this Court are bound by the construction placed upon it by this Court, to conduct their business and social relations upon the theory that the law has been settled by the highest authority known to the law. The legislative department is vested with the power to change or amend laws, and it is presumed to keep up with the construction placed upon statutes, that it may properly and intelligently exercise this function. Where the legislature is readopting a code, it is presumed to, and in fact does, through appropriate committees, investigate the sections of the Code and the constructions placed upon them, and may change the laws if they need changing. That function should not be exercised by the Court.

It is true that the Court has the power to overrule its decisions construing the statutes prior to their re-enactment or readoption or recodification by the legislature; but that power should cease when its decisions have received the sanction of the legislature. It has been said that it is a dangerous thing to be wiser than the law; and those exercising this power should always bear in mind that changing decisions may greatly disturb transactions made in accordance with the decisions of the Court. The rule that the legislature, by re-enacting a statute without change, also adopted the construction placed upon it by the Court is clearly conducive to the public welfare; for when the legislature changes the law its operation is prospective or forward-looking; but when the Court changes its decision it unsettles business and transactions made on the faith of the Court's decisions in the conduct of their business and personal relations.

I think it is beyond the rightful power of the Court to overrule a decision which has received legislative sanction through re-enactment of the statute and the construction placed upon it by the Court. The statute here involved serves a most wholesome purpose. Every person who takes an insurance policy knows that as a rule they contain many provisions limiting the liability and the rights of the parties; and it is difficult for even the legal mind to reach a correct understanding of many of these provisions. It is the purpose of section 5196 of the Code to make the act of the agent the act of the insuring company, insofar as it falls within the authority confided to the agent, with the intention that the company shall exercise caution in selecting proper agents to deal with the public. Under our laws only corporations can engage in the insurance business, or become insurers of persons or property; and since a corporation can only act through agents, it is a wise policy to require that the corporation shall be bound by the act of its agent within the field, and for the purposes of his employment by the corporation; and the doctrine of waiver and estoppel should be applied in proper cases.

Overruling a line of decisions which have been in force for a long time in such a general field as insurance operates will certainly affect many contracts.